# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38694

IN THE MATTER OF THE ESTATE OF: )
GEORGE D. PERRY. )
-------------------------------------------------------- )
IDAHO DEPARTMENT OF HEALTH & )
WELFARE, )
)          **Boise, June 2012 Term**
)
Petitioner-Appellant, )
)          **2012 Opinion No. 118**
)
v. )
)          **Filed: August 9, 2012**
)
BARBARA K. MCCORMICK, Personal )
Representative of the ESTATE OF GEORGE )          **Stephen W. Kenyon, Clerk**
D. PERRY, )
)
Respondent. )
_____ )

Appeal from the District Court of the Fourth Judicial District of the State of
Idaho, Ada County. Hon. Kathryn A. Sticklen, District Judge.

The judgment of the district court is <u>reversed</u>.

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant. Corey
Cartwright argued.

Sisson & Sisson, Boise, for respondent. Peter Sisson argued.

_____

J. JONES, Justice.

This appeal arises from a claim filed by the Idaho Department of Health and Welfare (the
Department) in the probate proceeding of George D. Perry, the deceased spouse of a Medicaid
recipient, Martha J. Perry. The Department sought to recover funds under I.C. § 56-218 from the
sale of the couple's home—their only significant asset—to recoup Medicaid benefits paid to
Martha during her lifetime. The magistrate court disallowed the Department's claim for recovery,
finding that Martha had no interest in the real property because George, acting for Martha under a
power of attorney, conveyed the property to himself before his death. That decision was upheld on
appeal to the district court. The Department now appeals to this Court, and we reverse.

1

# I.
# FACTUAL AND PROCEDURAL HISTORY

This case stems from the probate of the estate of George D. Perry, who was born April 7, 1929, and died February 25, 2009. At the time of his death, George was married to Martha J. Perry, who was born November 13, 1930, and died May 3, 2010. Before George and Martha were married, Martha—then known as Martha Jean Boyle—owned a home in Ada County as her sole and separate property. On November 18, 2002, well into the couple's marriage, Martha executed a Quitclaim Deed conveying the home to "Martha Jean Perry and George Donald Perry" as grantees. The deed was recorded that same day in Ada County.

On March 3, 2005, Martha executed a general durable power of attorney, naming George as her attorney-in-fact. On July 31, 2006, George conveyed Martha's remaining interest in the couple's real property to himself, signing a Quitclaim Deed on behalf of Martha using the power of attorney. The deed was recorded the same day. Around September 15, 2006, George and Martha applied to the Idaho Department of Health and Welfare for medical assistance to assist in Martha's medical care. From October 1, 2006, until Martha's death, the Department provided medical benefits of more than $100,000 to Martha through the Medicaid program.

On February 25, 2009, George predeceased Martha, and in March 2009, Barbara K. McCormick was appointed personal representative of his estate. The primary and only significant asset of the estate was the home, which was sold by the personal representative for a net of $81,688.95. In April 2009, the Department filed a contingent claim[1] with the probate court, seeking to establish a claim in the probate for funds in the amount of $106,251.08 for the Medicaid benefits provided to Martha. Specifically, the Department claimed entitlement under I.C. § 56-218[2] to "any property or estate which, at any time, had been the community property of the

---

[1] The claim was contingent because Martha was still living at the time.

[2] Idaho Code § 56-218 provides, in relevant part:

> (1) Except where exempted or waived in accordance with federal law medical assistance pursuant to this chapter paid on behalf of an individual who was fifty-five (55) years of age or older when the individual received such assistance may be recovered from the individual's estate, and the estate of the spouse, if any, for such aid paid to either or both:

> * * * *

> (b) While one (1) spouse survives, except where joint probate will be authorized pursuant to section 15-3-111, Idaho Code, a claim for recovery under this section may be established in the estate of the deceased spouse.

decedent and decedent's spouse, or which had been the property of decedent's spouse."[3]

The magistrate court denied the claim, finding that although I.C. § 56-218 allows the Department to recover against the estate of a Medicaid recipient's spouse, such recovery is limited to "property in which the recipient spouse had an interest at the time of her death," and that Martha validly conveyed her interest in the home to George via the power of attorney before that time. On appeal to the district court, the district court affirmed the magistrate court's decision and declined to award attorney fees. The Department timely appealed to this Court.

## II.
## ISSUES ON APPEAL

I.      Did the district court err in upholding the denial of the Department's claim on the basis that, under I.C. § 56-218 and 42 U.S.C. § 1396p, the Department may only recover assets in which a Medicaid recipient has an interest at the time of her death?

II.     Did the district court err in upholding the magistrate court's determination that the general power of attorney executed by Martha gave George the power to convey her interest in the property to himself?

III.    Is the Estate entitled to attorney fees on appeal?

## III.
## DISCUSSION

### A.      Standard of Review

"On appeal of a decision rendered by a district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *In re Doe*, 147 Idaho 243, 248, 207 P.3d 974, 979 (2009). However, to determine whether the district court erred in affirming the magistrate court, independent review of the record before the magistrate court is necessary. *Id.* This Court reviews questions of law *de novo. Martin v. Camas Cnty. ex rel. Bd. of Comm'rs*, 150 Idaho 508, 511, 248 P.3d 1243, 1246 (2011). The interpretation of a statute is a question of law. *State Dep't of Health and Welfare v. Housel*, 140 Idaho 96, 100, 102, 90 P.3d 321, 325 (2004). Further, whether Idaho law is preempted by federal law is also a question of law. *Christian v. Mason*, 148 Idaho 149, 151, 219 P.3d 473, 475 (2009).

---

I.C. § 56-218(1).

[3] Because Martha was still living at the time, the Department stated that it would not object to distribution of the estate to Martha but demanded that "before any other distribution of the estate, adequate provision be made for the future payment of the Department's claim pursuant to I.C. § 15-3-810(b)(2)." *See* I.C. § 56-218(a) ("There shall be no adjustment or recovery until after the death of both the individual and the spouse. . . .")

**B. The district court erred in determining that, under I.C. § 56-218 and 42 U.S.C. § 1396p, the Department may only recover assets in which a Medicaid recipient has an interest at the time of her death.**

Although the Department claimed entitlement under I.C. § 56-218 to recover "any property or estate which, at any time, had been the community property of [George and Martha], or which had been the property of [Martha]," the magistrate court found that its recovery was limited to property in which Martha had an interest at the time of her death. The magistrate court relied on a Minnesota Supreme Court interpretation of definitions in the federal Medicaid recovery statute as limiting the extent to which states may recover property transferred by the recipient before death. *See In re Estate of Barg*, 752 N.W.2d 52 (Minn. 2008). On appeal, the district court agreed with that interpretation, finding that although Idaho law alone would allow recovery of the former community property here, such recovery would conflict with federal law and, thus, was preempted by federal law. On appeal to this Court, the Department argues that: no conflict exists between the plain language of Idaho and federal law, *Barg* does not apply, and this Court already disposed of this issue in *Idaho Department of Health and Welfare v. Jackman*, 132 Idaho 213, 970 P.2d 6 (1998). The Estate responds that: the magistrate and district courts were correct under the plain statutory language and the reasoning in *Barg*, *Jackman* does not resolve the question, and the Department's argument relies on a general definition of "assets" in the federal statutory scheme that does not displace the more specific provision at issue.

The Medicaid program is a "cooperative endeavor [with the states] in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 U.S. 297, 308 (1980). Participating states enact legislation and rules, incorporate them into state medical assistance plans, and submit those plans to the U.S. Secretary of Health and Human Services (HHS) for approval. 42 U.S.C. § 1396a(a)–(b). Upon approval, the states receive federal payments for the program. 42 U.S.C. § 1396. As one of the many conditions for receipt of federal Medicaid funds, federal law specifically regulates when and to what extent states may recover for payments made to individuals. 42 U.S.C. § 1396p.

The Supremacy Clause mandates that federal law "shall be the supreme Law of the Land," and the U.S. Supreme Court has held that a state law which conflicts with federal law is "without effect." U.S. Const. art IV, § 2; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). In determining whether state law is preempted, we begin with a presumption of no preemption. *Walker v. Am. Cyanamid Co.*, 130 Idaho 824, 828, 948 P.2d 1123, 1127 (1997). We have stated:

4

> "The preemption of state law is not to be readily inferred." Federal law may preempt state law in one of two ways. First, if Congress has shown the intent to occupy a given field, any state incursion into that field is preempted by federal law. Second, even if the field is not preempted, if state law conflicts with federal law, it is preempted to the extent of the conflict. In order to find that a state law has been preempted, this Court must determine that the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Essentially, this Court must find that a state law is directly contrary to the congressional intent behind a federal statute before state law will be preempted.

*Christian*, 148 Idaho at 152, 219 P.3d at 476 (quoting *In re Estate of Mundell*, 124 Idaho 152, 153, 857 P.2d 631, 632 (1993)) (citations omitted).

The cooperative nature of the Medicaid program shows that Congress did not intend to occupy the entire Medicaid field, as the federal Medicaid statute calls for participating states to adopt their own legislation and regulations. *E.g.* 42 U.S.C. § 1396a(a)–(b). However, it is clear that Congress made compliance with federal law a prerequisite to states participating in the program. *E.g.* 42 U.S.C. § 1396p; 42 U.S.C. § 1396a(a)(18). In the Medicaid recovery context, Congress has stated the general rule that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made," and then specifies certain exceptions to that rule. 42 U.S.C. § 1396p(b)(1). However, more broadly, Medicaid has always been intended to be "the payer of last resort." *Arkansas Dep't of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 291 (2006) (quoting S. Rep. No. 99–146, at 313 (1985)). Accordingly, excess resources saved by virtue of Medicaid funds are meant to be tracked and recovered. *See Cohen v. Comm'r of Div. of Med. Assistance*, 668 N.E.2d 769, 772 (1996) (quoting H.R. Rep. No. 265, at 72 (1985)); H.R. Rep. No. 105(II), at 73 (1987) ("Medicaid—an entitlement program for the poor—should not facilitate the transfer of accumulated wealth from nursing home patients to their non-dependent children.").[4]

---

[4] Commentary on the Omnibus Budget Reconciliation Act of 1993 (OBRA) amendments to the Medicaid law, which added the disputed definition of "estate" in subsection 1396p(b)(4), is also enlightening in this regard:

> Under the Committee bill, <u>States are required to establish an estate recovery program</u> that meets certain requirements. <u>The program must identify and track resources (whether or not excluded for eligibility purposes)</u> of individuals who receive nursing facility, home and community-based services, and other specified long-term care services. <u>The program</u> must promptly ascertain when the individual and the surviving spouse, if any, dies, and <u>must provide for the collection of the amounts correctly paid by Medicaid on behalf of the individual for long-term care services from the estate of the individual or the surviving spouse.</u>

Under *Christian*, we are tasked with interpreting 42 U.S.C. § 1396p—in light of the Medicaid program's overall purpose—to determine whether the Department's interpretation of I.C. § 56-812 in IDAPA 16.03.09.905.01 is "directly contrary" to that federal congressional intent. On statutory interpretation, this Court recently summarized:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011).

The governing federal provision in this case is 42 U.S.C. § 1396p(b)(1), which states in relevant part:

> (1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:
>
>     * * * *
>
>     (B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate, but only for medical assistance consisting of—
>
>         (i) nursing facility services, home and community-based services, and related hospital and prescription drug services . . . .

42 U.S.C. § 1396p(b)(1). The section goes on to specifically define the term "estate," providing:

> (4) For purposes of this subsection, the term "estate", with respect to a deceased individual—
>
>     (A) shall include all real and personal property and other assets included within the individual's estate, as defined for purposes of State probate law; and

---

H.R. Rep. No. 103-111, at 535 (1993) (emphasis added).

(B) may include, at the option of the State (and shall include, in the case of an individual to whom paragraph (1)(C)(i) applies), any other real and personal property and other assets in which the individual had any legal title or interest at the time of death (to the extent of such interest), including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement.

42 U.S.C. § 1396p(b)(4).[5] The term "assets" is further defined in the general "definitions" provision for section 1396p:

(1) The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action—

(A) by the individual or such individual's spouse . . . .

42 U.S.C. § 1396p(h)(1). In addition, "resources" is defined as having "the meaning given such term in section 1382b of this title, without regard (in the case of an institutionalized individual) to the exclusion described in subsection (a)(1) of such section." 42 U.S.C. § 1396p(h)(5). Finally, the cross reference in that subsection—1382b—contains an exhaustive list of what will be excluded "[i]n determining the resources of an individual (and his eligible spouse, if any)." 42 U.S.C. § 1382b(a). Subsection (a)(1) refers to "the home (including the land that appertains thereto)." 42 U.S.C. § 1382b(a)(1).

The Idaho counterpart to the federal statutory scheme is I.C. § 56-218, which provides:

(1) Except where exempted or waived in accordance with federal law medical assistance pursuant to this chapter paid on behalf of an individual who was fifty-five (55) years of age or older when the individual received such assistance may be recovered from the individual's estate, and the estate of the spouse, if any, for such

---

[5] Prior to the OBRA amendments, the statute contained no definition of the term "estate," and the recovery provision read:

(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except—

* * * *
(B) in the case of any other individual who was 65 years of age or older when he received such assistance, from his estate.

42 U.S.C. § 1396p(b)(1) (1988).

aid paid to either or both:

\* \* \* \*

(b) While one (1) spouse survives, except where joint probate will be authorized pursuant to section 15-3-111, Idaho Code, a claim for recovery under this section may be established in the estate of the deceased spouse.

I.C. § 56-218(1).  The Idaho statute adopts almost word-for-word the definition of "estate" from the federal code, providing:

(4) For purposes of this section, the term "estate" shall include:

(a) All real and personal property and other assets included within the individual's estate, as defined for purposes of state probate law; and

(b) Any other real and personal property and other assets in which the individual had any legal title or interest at the time of death, to the extent of such interest, including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement.

I.C. § 56-218(4).  The regulations adopted by the Department further provide:

Limitations on Estate Claims.  Limits on the Department's claim against the assets of a deceased participant or spouse are subject to Sections 56-218 and 56-218A, Idaho Code.  A claim against the estate of a spouse of a participant is limited to the value of the assets of the estate that had been, at any time after October 1, 1993, community property, or the deceased participant's share of the separate property, and jointly owned property. . . .

IDAPA 16.03.09.905.01.

Looking to the plain language of the state and federal statutory schemes, there are indeed plain differences between the two.  First, while 42 U.S.C. § 1396p(b)(1) expressly allows recovery from only "the individual's estate," I.C. § 56-218(1) provides that the state may seek recovery from both "the individual's estate, and the estate of the spouse, if any, for such aid paid to either or both."  The Idaho counterpart to the federal provision certainly seems to expand on the federally mandated scope of recovery.  However, the federal statute also expressly allows states to expand the definition of "estate" beyond the "real and personal property and other assets" in the individual's own estate to also include "any other real and personal property and other assets in which the individual had any legal title or interest at the time of death."  42 U.S.C. § 1396p(b)(4).  As such, it seems the state is well within its power to allow recovery of such assets,

8

even if those assets are pursued through the estate of the recipient's spouse.[6]  Indeed, Idaho has adopted this more expansive definition of "estate" almost word-for-word in I.C. § 56-218(4). The more difficult difference to reconcile between the two schemes is the Department's regulation, IDAPA 16.03.09.905.01.  The regulation allows recovery through the recipient's spouse's estate not only of assets in which the recipient holds an interest at the time of death, but also "assets of the estate that had been, at any time after October 1, 1993, community property." IDAPA 16.03.09.905.01.[7]

The Department seeks to reconcile its regulation with federal law by way of two statutory language theories.  The first is based on the definition of "estate" in 42 U.S.C. § 1396p(b)(4)(B). The Department points to the second half of the more expansive federal and state definition of "estate," which provides that the recoverable assets held by the recipient at the time of death also include "such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." The Department argues that "other arrangement" may be read to include assets that were held by

---

[6] Indeed, in a case decided under the pre-OBRA version of the law, we found it appropriate to recover certain assets from the estate of the surviving spouse. *Jackman*, 132 Idaho at 215–16, 970 P.2d at 8–9.  However, we relied on the definition of "estate" under state probate law, which is "all property of the decedent, including community property of the surviving spouse subject to administration, property of trusts, and property of any other person whose affairs are subject to this code as it exists from time to time during administration."  I.C. § 15-1-201(16).  Thus, we did not squarely address whether the Department could recover community property in which the recipient had transferred her interest prior to death. *See id.* The Department additionally argued that the broadened definition of "assets" contained in the OBRA amendments (42 U.S.C. § 1396p(e)(1)(B)), which included "resources" the "individual's spouse is entitled to but does not receive because of action . . . by a person . . . with legal authority to act in place of . . . such individual's spouse," allowed for recovery of assets transmuted into separate property. The Court held that since the transmutation in that case occurred prior to the OBRA amendments, no recovery could be made. However, the court left the impression that, had the transmutation been accomplished after August 10, 1993, the effective date of the OBRA amendments, the outcome may have been different. The Department thereafter adopted IDAPA 16.03.09.905.01, allowing for recovery of property that "had been" community property after October 1, 1993. *Jackman*, 132 Idaho at 216−17, 970 P.2d at 9−10.

[7] Further evidence of the State's intent to recover community assets that were transferred by or on behalf of a deceased participant is IDAPA 16.03.09.905.05, which provides:

> A marriage settlement agreement or other such agreement which separate assets for a married couple does not eliminate the debt against the estate of the deceased participant or spouse. Transfers under a marriage settlement agreement or other such agreement may be voided if not for adequate consideration.

As mentioned above, states are required to submit their state medical assistance plans, incorporating applicable laws and rules, to HHS for approval before receiving federal Medicaid funds. Both of these recovery provisions have been in effect since March 30, 2007, and have presumably met with the approval of HHS since Idaho has been a participating Medicaid state continuously since that time. Although neither party addressed this issue, it can reasonably be presumed that the recovery provisions were not found to be impediments to Idaho's Medicaid participation.

the recipient but conveyed to a spouse before death.  To dispute this position, the Estate primarily relies on a Minnesota Supreme Court case, *Estate of Barg*, 752 N.W.2d 52.

*Barg* indeed addresses a very similar question as in the case at hand—specifically, whether the state may recover from a recipient's spouse's estate "the value of the assets of the estate that were marital property or jointly owned property at any time during the marriage."  *Id.* at 68.  However, the *Barg* court examined section 1396p(b)(4) and found that it preempted this expansive recovery.  *Id.*  The court stated:

> The "including" clause further describes the assets that a state may include in this expanded estate. The clause describes those assets in two ways—first by the limiting adjective "such," and second by the language describing how and to whom "such assets" are "conveyed." The "such" limitation plainly refers back to the immediately preceding clause describing the assets as those "in which the individual had any legal title or interest at the time of death." The including clause then describes to whom "such" assets may have been conveyed—a "survivor, heir, or assign *of the deceased individual.*" *Id.* (emphasis added). And finally, the clause describes several methods by which the conveyance of "such" assets might take place—"through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." *Id.*
>
> Inclusion in the list of examples of "such assets" is predicated on the recipient having a legal interest at the time of death. When we construe a federal statute we must, if at all possible, give effect "to every word Congress used." *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). To read "other arrangement" to include a lifetime transfer would be to read the words "at the time of death" out of the statute. The conclusion that "other arrangement" cannot include lifetime transfers is further supported by the additional context. "[O]ther arrangement" ends a list of examples of conveyances that occur at the time of death. The list of recipients of the conveyance, "a survivor, heir, or assign of the deceased individual," leaves no doubt that the "individual," a Medicaid recipient, must have died for the conveyance to occur. A recipient cannot have heirs or survivors during his or her lifetime. Nor can there be an "assign of the deceased" during the recipient's lifetime. In light of the plain statutory language and its context, the conclusion of the [North Dakota Supreme Court in *In re Estate of Wirtz*, 607 N.W. 2d 882 (N.D. 2000)] that "other arrangement" is sufficiently ambiguous to include lifetime transfers is unreasonable.
>
> We conclude that there is no principled basis on which to interpret the federal law to allow recovery of assets in which the Medicaid recipient did not have an interest at the time of her death.

10

*Estate of Barg*, 752 N.W.2d at 70–71. The Estate also relies on similar reasoning in an *amicus* brief submitted by the U.S. Solicitor General when the State of Minnesota petitioned the U.S. Supreme Court for *certiorari*, seeking to have *Barg* overturned.[8]

However, the language of 42 U.S.C. § 1396p(b)(4)(B) does not lend itself to the definitive interpretation made by the *Barg* court. The court indicated that "other arrangement" could not include lifetime transfers because it comes at the end of a list of conveyances that occur at the time of death. However, a conveyance of a life estate does not necessarily occur at the time of death. Nor does a conveyance into a "living trust." It would seem that a Medicaid recipient would make such conveyances prior to death and that "other arrangement" could include other lifetime conveyances. Indeed, the use of the word "conveyed" is more indicative of a lifetime transfer than one made in the context of a decedent's estate, where "devised," "bequeathed," or "devolved" would be more appropriate. Further, the language "any other real and personal property and other assets in which the individual had any legal title or interest at the time of death" is not entirely clear. For instance, one might wonder what "other assets" a person could own other than real and personal property. And, one could interpret the "in which" clause to apply just to "other assets" or to both those and real and personal property. Thus, while the *Barg* court seemed convinced that the language excluded lifetime transfers, we find it to be ambiguously inclusive.

When considering the interpretation of a particular provision, particularly one containing ambiguities, a court should look to the surrounding provisions for proper context. *See Schulz*, 151 Idaho at 866, 264 P.3d at 973 ("Provisions should not be read in isolation, but must be interpreted in the context of the entire [statute].") The Department also relies on the definition of "assets" in 42 U.S.C. § 1396p(h)(1). The Department points out that the federal definition of "estate" refers to "assets" of the individual, a term that is specifically defined in 42 U.S.C. § 1396(h)(1) as "all income and resources of the individual and of the individual's spouse, including any income or

---

[8] In its argument, the Estate makes two creative but untenable logical leaps regarding the Solicitor General's *amicus* brief. First, it argues that the brief is tantamount to a federal agency interpretation of federal law and, thus, entitled to *Chevron* deference. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). However, the U.S. Supreme Court has stated: "We have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that 'Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.'" *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988). Second, the Estate argues that because the U.S. Supreme Court invited the Solicitor General's briefing on the issue following the State of Minnesota's petition for *certiorari* in *Barg* and then declined to grant *cert*, "[i]t is reasonable to assume the Court accepted the Solicitor General's view of the matter." On the contrary, we decline to make such an assumption.

resources which the individual or such individual's spouse is entitled to but does not receive because of action . . . by the individual or such individual's spouse." Further, "resources" is also specifically defined as having the meaning given in section 1382b "without regard (in the case of an institutionalized individual) to the exclusion described in subsection (a)(1) of such section." 42 U.S.C. § 1396p(h)(5). Section 1382(b)(a)(1) excludes "the home" from what generally may be considered a resource for purposes of determining Medicaid eligibility.

In this regard, the district court made a clear error of law based on an apparent misreading of that cross-reference, finding that "the home" was also excluded for purposes of recovery. The opposite is true. The "without regard" language in section 1396p(h)(1) shows that Congress clearly meant to *include* the home for purposes of recovery. Moreover, the definition of "assets," which section 1396p(h) says "shall apply" to the entirety of section 1396p, includes "*all* income and resources" of both spouses other than that excluded by section 1382b. 42 U.S.C. § 1396p(h) (emphasis added). It also seems to specifically address resources in which the recipient had an interest at one time but disposed of through her own actions or those of her spouse—such as a lifetime transfer of a home. This expansive definition of "assets," which is imported into section 1396p(b)(4)'s definition of "estate" by the definition's use of that term, well supports Idaho's provision for recovery from the estates of both spouses in I.C. § 56-218(1). Equally, it supports the Department's regulation providing recovery from the spouse of property that was once held by the community but was somehow disposed of before death. IDAPA 16.03.09.905.01.

Although the *Barg* court analyzed the definition of "estate" in 42 U.S.C. § 1396p(b)(4)(B), it did not address the definition of "assets" in section 1396p(h)(1). 752 N.W.2d 52. The only authority the Estate submits to dispute the Department's reliance on the definition of "assets" in 42 U.S.C. § 1396p(h)(1) is the Solicitor General's *amicus* brief. The Solicitor General wrote:

> Although the general statutory definition of "assets" does encompass resources of both "the individual" (*i.e.*, the Medicaid recipient) and "The individual's spouse," the particular provision of the Medicaid Act at issue here refers specifically to any "assets in which the individual had any legal title or interest at the time of death." 42 U.S.C. 1396p(b)(4)(B). Petitioner's argument finds it necessary to rewrite that clause to read "'any * * * assets in which [*either or both the individual and the individual's spouse*] had any legal title or interest.'" But this editing does nothing less than make the statute say the opposite of what it says. The plain language of the operative provision of the Act refutes petitioner's readings.

Brief for the United States as Amicus Curiae at 10–12, *Vos v. Barg*, 129 S.Ct. 2859 (Mem), 2009

WL 1511741 (June 29, 2009).

The magistrate court seems to have agreed with this interpretation, finding that importing the definition of "assets" into the definition of "estate" to be "awkward."[9] However, ignoring the definition of "assets" completely—particularly where the statute states that the definition "shall apply" to the entire section—is equally awkward. 42 U.S.C. § 1396p(h). Such an interpretation would render that entire definition superfluous, which this Court has held it will not do. *Schulz*, 151 Idaho at 866, 264 P.3d at 973 ("It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant."). Further, Congress provided evidence that the definition of "assets" is not exclusive of the definition of "estate." As the Department points out, section 1396p(h)(1) speaks of assets "with respect to the individual," which is reminiscent of section 1396p(b)(4)(B)'s reference to "assets in which the individual" had a legal title or interest.[10]

Overall, the ambiguously inclusive language in the definition of "estate"—purporting to extend recovery to assets transferred by "other arrangements"—coupled with the definition of "assets"—plainly including the resources of the recipient's spouse as well as assets the recipient disposed of before death—calls into question the Estate's strict reliance on the phrase "at the time of death." 42 U.S.C. §§ 1396p(b)(4), 1396p(h)(1). At the very least, it renders the proper scope of recovery somewhat ambiguous, in which case this Court may look to the overall purpose of the statute for guidance. *See Schulz*, 151 Idaho at 866, 264 P.3d at 973. The North Dakota Supreme Court relied on this overall purpose in *In re Estate of Wirtz*, 607 N.W.2d 882, 885 (N.D. 2000), holding:

> We conclude consideration of all the relevant statutory provisions, in light of the Congressional purpose to provide medical care for the needy, reveals a legislative intention *to allow states to trace the assets of recipients of medical assistance and recover the benefits paid when the recipient's surviving spouse dies.*
>
> We hold any assets conveyed by [the recipient] to [the recipient's spouse] before [the recipient's] death and traceable to [the recipient's] estate are subject to the department's recovery claim. However, the recoverable assets do not include all

---

[9] However, like the *Barg* court, it seems the magistrate was stuck on the interpretation of "other arrangement" rather than the plain language definition of "assets."

[10] The Department also relies on our opinion in *Jackman*, 132 Idaho at 216, 970 P.2d at 9, for the proposition that we have previously discussed and approved of "[t]his special definition of assets." Indeed, we did address the definition in *Jackman* but concluded that it did not apply, finding the case subject to the pre-OBRA version of the federal law that did not contain the definition. *Id.* at 216–17, 970 P.2d at 9–10.

property ever held by either party during the marriage. 42 U.S.C. § 1396p(b) contemplates only that assets in which the deceased recipient once held an interest will be traced. It does not provide that separately-owned assets in the survivor's estate, or assets in which the deceased recipient never held an interest, are subject to the department's claim for recovery.

607 N.W.2d at 886 (emphasis original) (citations omitted).

This Court has been loathe in the past to surrender State sovereignty to the federal government and has found preemption of our State's duly enacted laws only where the congressional intent is rather clear. *Christian*, 148 Idaho at 152, 219 P.3d at 476. In light of the ambiguously inclusive nature of 42 U.S.C § 1396p(b)(4)(B) and the plain definition of "assets" in 42 U.S.C. § 1396(h)(1), we cannot find that federal law preempts the State from providing for recovery of assets from both spouses' estates under I.C. § 56-218(1), including assets that were community property during the marriage. The Department's interpretation of I.C. § 56-218 in IDAPA 16.03.09.905.01 advances the overall purpose of the federal Medicaid program to remain the payer of last resort and is certainly not "directly contrary" to that congressional intent. *Christian*, 148 Idaho at 152, 219 P.3d at 476. Although the juxtaposition of the language "at the time of death" and the other, more inclusive language in the statute is perplexing, we find that ambiguity insufficient to overcome our presumption against preemption of state law. *See Walker*, 130 Idaho at 828, 948 P.2d at 1127. More specifically to the case at hand, because the federal definition of "resources" *includes* the home for purposes of recovery, the state is not precluded from staking a claim to the resource at issue here—the home that was previously the community property of Martha and now rests in George's estate. Therefore, the magistrate and district courts erred in disallowing that claim. Because we find that the Department may reach the home, regardless of which spouse owned it at death, we have no need to reach the remaining issue regarding George's transfer via power of attorney.

### C. The Estate is not entitled to attorney fees on appeal.

The Estate argues for attorney fees on appeal pursuant to I.A.R. 35(b)(5) and I.C. § 12-117. Because the Estate is not a prevailing party on appeal, however, it is not entitled to fees.

## IV.
## CONCLUSION

For the foregoing reasons, we find that the district court erred in finding that federal law preempted the Department's ability to recover from George's estate what was once Martha's community property during the marriage. Therefore, the district court's decision is reversed and

14

the case is remanded for further proceedings consistent with this opinion. Costs to the Department.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.