**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 40615**

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF MELVIN PETERSON, DECEASED. | ) ) | Coeur d'Alene, April 2014 |
| ----------------------------------------------------------- | ) | |
| IDAHO DEPARTMENT OF HEALTH & WELFARE, | ) ) | 2014 Opinion No. 132 |
| | ) | Filed: December 12 2014 |
| Petitioner-Respondent, | ) ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| | ) | SUBSTITUTE OPINION, THE |
| CATHIE PETERSON, | ) | COURT'S PRIOR OPINION |
| | ) | DATED AUGUST 13, 2014 IS |
| Respondent-Appellant. | ) | HEREBY WITHDRAWN. |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Boundary County. Hon. Jeff M. Brudie, District Judge.

District court decision affirming magistrate court's decision on Medicaid recovery, <u>affirmed in part</u> and <u>remanded</u> for proceedings consistent with this opinion.

Featherston Law Firm, Chtd. Sandpoint, for appellants. Brent C. Featherston argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondents. William C. Cartwright, Deputy Attorney General argued.

_____

BURDICK, Chief Justice

This case arose out of the Department of Health and Welfare's (IDHW) attempt to recover Medicaid benefits from Melvin Peterson's estate that were paid during his lifetime. At issue is whether any part of a real estate transfer from Melvin Peterson to his daughter Cathie Peterson is subject to Medicaid recovery.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts of this case are not in dispute. Melvin Peterson died on March 3, 2007, at the age of 83. Prior to his death, he was the owner of residential real property located in

Boundary County. On December 6, 2001, Melvin Peterson executed a Gift Deed of his real property to his daughter, Cathie Peterson, retaining for himself a life estate in the property. Shortly thereafter, he applied for Medicaid and began receiving Medicaid benefits in March 2003. At the time of his death, Melvin Peterson had received a total of $171,386.94 in Medicaid benefits.

Cathie Peterson was appointed personal representative of her father's estate on July 26, 2007. IDHW filed a timely Claim Against Estate and later an Amended Claim Against Estate in the amount of $171,386.94. Cathie Peterson, in her capacity as personal representative, disallowed the claims without stating a reason. In response, IDHW filed a Petition for Allowance of Amended Claim. After a hearing on March 25, 2008, the court granted IDHW's petition.

After receiving no response to its claim against the estate, IDHW filed a Petition to Require Payment of Claim on May 5, 2008, setting forth its demand for payment of the value of Melvin Peterson's life estate. Using the Life Estate Remainder Table contained in IDAPA 16.03.05.837 and Melvin Peterson's age at the time of his death, IDHW valued the life estate at $41,444. After a hearing, the magistrate court entered an order requiring payment of IDHW's claim on June 12, 2008. This June 12, 2008 Order held that the life estate was an asset of the estate for purposes of Medicaid recovery and ordered the personal representative to add the life estate interest to the estate's inventory and assign it an appropriate value. However, the personal representative instead filed and was granted a motion to hire an appraiser to determine the fee simple value of the residential real property. After the personal representative failed to file an appraisal, IDHW filed various motions relative to the appraisal, sale of the property, and payment of its claim. On August 11, 2009, the magistrate court granted IDHW's motions to compel appraisal, sale of the property, and payment of the Medicaid claim, which the personal representative subsequently appealed.

On appeal, the district court vacated the magistrate's August 11, 2009 Order and remanded the matter for additional findings of fact and conclusions of law. Shortly after the ruling on appeal was entered, Cathie Peterson, in her capacity as personal representative, sought permission from the magistrate court to sell the property, liquidate an escrow account, and pay counsel for the personal representative of the estate. On the same day, she also filed an Amended Personal Representative's Inventory assigning the life estate zero value.

On September 17, 2010, Attorney Brent Featherston filed a Demand for Notice and Special Appearance on behalf of "Cathie Peterson, individually," stating that he was seeking to vacate and dismiss all orders entered by the magistrate court regarding her real property. IDHW responded by filing a petition to remove Cathie Peterson as personal representative of the estate, which the magistrate court granted.

Following a court trial, the magistrate court held that the life estate remainder interest was an estate asset of value for purposes of Medicaid reimbursement and that its value was to be determined in accordance with IDAPA 16.03.05.837.01. On appeal, the district court affirmed the magistrate court in its November 16, 2012 Opinion. Cathie Peterson then timely appealed to this Court on December 27, 2012.

## II. ISSUES ON APPEAL

1. Whether Cathie Peterson waived her appeal of the decision that Melvin Peterson's life estate was an asset subject to Medicaid recovery.

2. Whether the court had subject matter jurisdiction to determine the issues before it.

3. Whether the court had personal jurisdiction over Cathie Peterson individually.

4. Whether any part of the gift transaction Melvin Peterson made to his daughter before applying for Medicaid benefits is subject to Medicaid recovery.

5. Whether Cathie Peterson was entitled to offsets to the value of the real property based on improvements she made.

6. Whether either party is entitled to attorney fees on appeal.

## III. ANALYSIS

### A. Standard of Review

"On appeal of a decision rendered by a district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *Idaho Dep't Of Health & Welfare v. McCormick*, 153 Idaho 468, 470, 283 P.3d 785, 787 (2012) (quoting *In re Doe,* 147 Idaho 243, 248, 207 P.3d 974, 979 (2009)). However, to determine whether the district court erred in affirming the magistrate court, we review the record before the magistrate court to determine whether substantial and competent evidence supports the magistrate's findings of fact. *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013). We review questions of law such as statutory interpretation *de novo. McCormick*, 153 Idaho at 470, 283 P.3d at 787.

> Interpretation of a statute begins with an examination of the statute's literal words. Where the language of a statute is plain and unambiguous, courts give effect to the statute as written, without engaging in statutory construction. Only

3

where the language is ambiguous will this Court look to rules of construction for guidance and consider the reasonableness of proposed interpretations. Moreover, unless a contrary purpose is clearly indicated, ordinary words will be given their ordinary meaning when construing a statute. In construing a statute, this Court will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the legislature, based on the whole act and every word therein, lending substance and meaning to the provisions.

*In re Estate of Wiggins*, 155 Idaho 116, 119, 306 P.3d 201, 204 (2013) (internal citations and quotation marks omitted).

**B. Whether Cathie Peterson waived her appeal of the decision that Melvin Peterson's life estate was an asset subject to Medicaid recovery.**

IDHW argues that because the June 12, 2008 Order was an appealable order that was not appealed within 42 days, it is no longer subject to challenge on appeal. The June 12, 2008 Order granted IDHW's Petition to Require Payment of Claim to the extent of available assets and ordered that Melvin Peterson's retained life estate be deemed an asset of his estate for Medicaid recovery purposes and that the personal representative assign an appropriate value to it in the estate's inventory. About a year later, IDHW filed a Petition to Compel Sale of Home, which the magistrate court granted on August 11, 2009. In her capacity as personal representative, Cathie Peterson timely appealed the August 11, 2009 Order. In this first appeal, IDHW argued that the June 12, 2008 Order was final and not timely appealed. The district court issued its Decision on Appeal on May 26, 2010, holding that the June 12, 2008 Order was interlocutory and not appealable, and further vacated the judgment and remanded the case for the trial court to set forth adequate findings of fact. IDHW now argues that the district court erred in holding that the June 12, 2008 Order was interlocutory and asks this Court to reverse that decision.

Idaho Code section 17-201 allows appeals from a judgment or order of the magistrate division to the district court in eight different probate matters, three of which IDHW argues apply to the June 12, 2008 Order:

4. Against or in favor of setting apart property, or making an allowance for a widow or child.

5. Against or in favor of directing the partition, lease, mortgage, sale or conveyance of real property.

7. Refusing, allowing or directing the distribution or partition of an estate, or any part thereof, or the payment of a debt, claim, legacy or distributive share.

I.C. § 17-201.

4

In its May 26, 2010 Decision on Appeal, the district court concluded that the June 12, 2008 Order was interlocutory because the trial court did not determine any value, nor distribute, nor set aside, nor partition the life estate in the order itself. The district court is correct that the June 12, 2008 Order was interlocutory. Thus, Cathie Peterson did not waive her challenges to the June 12, 2008 Order by failing to appeal it and this Court may review any challenges to that order on appeal under Idaho Appellate Rule 17(e). *Matter of Estate of Keeven*, 110 Idaho 452, 456–57, 716 P.2d 1224, 1228–29 (1986) ("If there is a final appealable order in a case and an appeal is properly taken from that order, then all other orders which would otherwise not be appealable may be considered by this Court.").

**C. Jurisdiction**

Cathie Peterson contends that the court did not have subject matter jurisdiction to determine the title to her real property in a probate proceeding. She argues that she cannot be held personally liable except through a separate proceeding requiring process and acquisition of the court's jurisdiction, which did not occur in this case. She also contends that while she submitted to the court's jurisdiction as personal representative of the estate, the court lacks personal jurisdiction over her individually because IDHW failed to provide her with meaningful due process.

1. Subject Matter Jurisdiction

Both the magistrate court and the district court had subject matter jurisdiction to determine whether any part of Melvin Peterson's gift transaction of his residential property constituted a part of his estate. Cathie Peterson contends that such a decision is a question of title outside of a probate court's jurisdiction. Her argument is based on following language from this Court: "It is the general rule that where title to real property is in issue between an estate and its heirs and a third person, such issue must be tried in an independent action brought for that purpose in a competent tribunal and cannot be tried by the probate court." *In re Lundy's Estate*, 79 Idaho 185, 193, 312 P.2d 1028, 1032 (1957).

What Cathie Peterson overlooks is that Idaho adopted the Uniform Probate Code (Code) in 1971, fourteen years after *In re Lundy* was decided. In a more recent case, the petitioner made a similar mistake relying on Idaho case law from before the adoption of the Code that said the determination of whether an irrevocable contract exists was outside the realm of the probate court. *Miller v. Estate of Prater*, 141 Idaho 208, 213, 108 P.3d 355, 360 (2005). In *Miller*, this

5

Court stated that the Code provides "the court handling a probate with wide ranging powers to determine contested matters, such as that involved in this case." *Id.* We held that "it is clear that the court handling a probate has jurisdiction to determine the existence and enforcement of a contract to make a will or devise." *Id.* This conclusion was based on consideration of the following Code provisions:

> I.C. § 15-3-104 provides that, "No proceeding to enforce a claim against the estate of a decedent or his successors may be revived or commenced before the appointment of a personal representative." I.C. § 15-1-201(5) defines "claims" to include liabilities of the decedent "whether arising in contract, in tort or otherwise ..." As pointed out by the Estate, I.C. § 15-3-105 provides the "court" with exclusive jurisdiction of "formal proceedings" to determine how decedent's estates are to be "expended and distributed." According to I.C. § 15-1-201, formal proceedings are those conducted before a judge with notice to interested persons. I.C. § 15-3-106 provides catch-all authority for the court to determine any other controversy to which an estate may be a party, covering any matters not addressed in I.C. §§ 15-3-104 and 105. Necessarily included in such matters are contracts to make a will or devise, which are specifically addressed in I.C. § 15-2-701.

*Id.* Determining whether some or all of the property gift Cathie Peterson received from the decedent constitutes a part of the estate falls within the catch-all jurisdictional authority provided by Idaho Code section 15-3-106. Therefore, both the district court and the magistrate court had subject matter jurisdiction in this case.

### 2. Personal Jurisdiction

Next, Cathie Peterson contends that the court lacked personal jurisdiction over her in her individual capacity. While she admits she submitted to the court's jurisdiction in her capacity as personal representative, she appears to contend that IDHW was required to serve her with process individually when it sought to sell her real property to satisfy its claim against Melvin Peterson's estate. Any contention that Cathie Peterson did not receive notice is without merit. IDHW filed its Petition to Compel Sale of Home on July 15, 2009. Cathie was not removed as personal representative of the estate until October 7, 2010. Moreover, IDHW's Petition indicates that Cathie Peterson was served with the Petition; thus, she had notice of IDHW's intent to compel the sale of the home. IDHW was not required to serve her a second time when she had not only been aware of the proceedings, but had been an active participant in them. Idaho Code section 15-3-106 states:

> Subject to general rules concerning the proper location of civil litigation and jurisdiction of persons, the court may herein determine any other controversy concerning a succession or to which an estate, through a personal representative,

may be a party. Persons notified are bound though less than all interested persons may have been given notice.

Therefore, both the magistrate court and the district court had personal jurisdiction over Cathie Peterson.

**D. Whether any part of the gift transaction Melvin Peterson made to Cathie Peterson before applying for Medicaid benefits is subject to Medicaid recovery.**

The Medicaid program is a "cooperative endeavor [with the States] in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 U.S. 297, 308 (1980). The States receive federal payments for the program, but such payments are conditioned on various federal rules governing when and to what extent payments may be recovered from individuals. 42 U.S.C. § 1396p. In the Medicaid recovery context, Congress has stated the general rule that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made," and then specifies certain exceptions to that rule. 42 U.S.C. § 1396p(b)(1). However, more broadly, Medicaid has always been intended to be "the payer of last resort." *Arkansas Dep't of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 291 (2006) (quoting S.Rep. No. 99–146, at 313 (1985)). Accordingly, excess resources saved by virtue of Medicaid funds are meant to be tracked and recovered. *Idaho Dep't of Health & Welfare v. McCormick*, 153 Idaho 468, 471–72, 283 P.3d 785, 788–89 (2012).

The Idaho counterpart of the federal Medicaid Law is Idaho Code section 56-218, which provides for the recovery of certain assistance provided by Medicaid:

> Except where exempted or waived in accordance with federal law medical assistance pursuant to this chapter paid on behalf of an individual who was fifty-five (55) years of age or older when the individual received such assistance may be recovered from the individual's estate, and the estate of the spouse, if any, for such aid paid to either or both . . . .

This statute allows recovery of claims against the estate of a Medicaid recipient if the estate contains property or assets in which the Medicaid recipient had some legal title or interest at the time of his or her death. For the purposes of Medicaid recovery, Idaho has adopted an expanded definition of "estate," which in addition to all of the assets included in the individual's estate under probate law, also includes:

> Any other real and personal property and other assets in which the individual had any legal title or interest at the time of death, to the extent of such interest, including such assets conveyed to a survivor, heir, or assign of the deceased

individual through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement.

I.C. § 56-218(4)(b).

This Court has recognized that the legislative purpose behind the Medicaid recovery statutes is to prevent individuals from transferring their assets to survivors, heirs, or assigns, while at the same time benefiting from taxpayer funds intended to assist the poor. *See McCormick*, 153 Idaho at 472, 283 P.3d at 789. Accordingly, in addition to allowing the State to recover Medicaid benefits from a decedent's estate, Idaho Code section 56-218 also allows the State to file an action to void gratuitous transfers of property made within a specified time of the recipient receiving Medicaid benefits:

> Transfers of real or personal property, on or after the look-back dates defined in 42 U.S.C. 1396p, by recipients of such aid, or their spouses, without adequate consideration are voidable and may be set aside by an action in the district court.

I.C. § 56-218(2).

The look-back period applicable in this case is 36 months from when Melvin Peterson applied for Medicaid benefits. 42 U.S.C. § 1396p(c)(1). The parties do not dispute that Melvin Peterson transferred his residential estate, subject to a retained life estate, to Cathie Peterson for no consideration within the applicable look-back period. Instead of attempting to void this transaction under Idaho Code section 56-218(2), IDHW sought to have Melvin Peterson's retained life estate included as an asset of his estate under Idaho Code section 56-218(4)(b)'s expanded definition of "estate." However, the magistrate court held that the remainder interest that was gifted to Cathie, not the retained life estate interest, was subject to Medicaid recovery under Idaho Code section 56-218(4)(b). The district court agreed with the magistrate court's reasoning and affirmed its order. Indeed, after noting that the parties "consistently referred to the life estate as the property to be valued," the district court attempted to clarify what was subject to recovery:

> The lower court referred to the property interest to be valued as the life estate remainder interest. The correct interest to value for Medicaid recovery purposes is the property interest that was conveyed for less than fair market value, not the property interest retained. It is clear the magistrate court in the instant matter understood the property interest to be valued, as evidenced by his Order that reads, "The value of the estate's interest in the real property gift deeded to Cathie Peterson…shall be that proportion of the fair market value of the entire fee interest in the real property…."

8

Cathie Peterson and IDHW both frame the main issue of this case as being whether a decedent's retained life estate is subject to Medicaid recovery under Idaho Code section 56-218(4)(b) despite both lower courts holding that the remainder interest Melvin Peterson gifted to Cathie in 2001 was the interest subject to recovery. The district court held that because Melvin Peterson conveyed his residential real property to Cathie, subject to his life estate interest, during the look-back period free of cost, the transfer of the remainder interest to Cathie constituted an "other arrangement" under Idaho Code section 56-218(4)(b), and so, was part of Melvin Peterson's estate subject to Medicaid recovery. Therefore, the question on appeal is whether any part of the real property transfer from Melvin Peterson to Cathie Peterson is subject to Medicaid recovery.

According to 42 U.S.C. § 1396p, States "shall" define the estate for recovery purposes to include all property included in the probate estate, but "may" also define estate to include property that passes outside of the probate estate. 42 U.S.C. § 1396p(b)(4)(A) and (B). The Idaho legislature has chosen to include property that passes outside of probate and adopted the optional language from 42 U.S.C. § 1396p(b)(4)(B):

> Any other real and personal property and other assets in which the individual had any legal title or interest at the time of death, to the extent of such interest, including such assets conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, life estate, living trust or other arrangement.

I.C. § 56-218(4)(b).

In its argument that Melvin Peterson's retained life estate constitutes a part of his estate under this statute, IDHW relies on the language, "including such assets conveyed to a survivor, heir, or assign of the deceased individual through . . . life estate." In contrast Cathie Peterson focuses on the language "legal title or interest at the time of death, to the extent of that interest." The lower courts in this case relied on the catch-all phrase "or other arrangement" and this Court's decision in *Idaho Department of Health & Welfare v. McCormick* to conclude that that the remainder interest gifted to Cathie was subject to Medicaid recovery. To determine the correct approach, it is necessary to look at our two most recent decisions addressing the extent to which a Medicaid recipient's estate is subject to recovery.

In *McCormick*, this Court was faced with determining whether assets that were once community property, but were transmuted so that the recipient spouse no longer held an interest at the time of his or her death, were available for recovery under Idaho Code section 56-

9

218(4)(b). At issue was a married couple's residence that was jointly held until the wife transferred the property to her husband by quitclaim deed in order to qualify for Medicaid benefits. *McCormick*, 153 Idaho at 469, 283 P.3d at 786. The husband, who was not a Medicaid recipient, predeceased his wife and IDHW sought to recover the benefits paid to his wife from his estate. IDHW claimed entitlement under Idaho Code section 56-218 to "any property or estate which, at any time, had been the community property of the decedent and decedent's spouse, or which had been the property of decedent's spouse." *Id.* at 470, 283 P.3d at 787.

This Court found section 56-218(4)'s expanded definition of "estate" to be "ambiguously inclusive." *Id.* at 476, 283 P.3d at 793. Given the ambiguity of this provision, we looked to the surrounding provisions for proper context—specifically, the definition of "asset" within the federal statutory scheme on which Idaho's Medicaid recovery statute is based. *Id.* at 473, 283 P.3d at 790. The federal definition of "estate" refers to "assets" of the individual, a term that is specifically defined in 42 U.S.C. § 1396p(h)(1) as "all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action . . . by the individual or such individual's spouse." We noted that this definition of assets "seems to specifically address resources in which the recipient had an interest at one time but disposed of through her own actions or those of her spouse—such as a lifetime transfer of a home." *Id.* at 476, 283 P.3d at 793. This definition of asset coupled with "the ambiguously inclusive language in the definition of 'estate'—purporting to extend recovery to assets transferred by 'other arrangements'"— made this Court question the Estate's strict reliance on Idaho Code section 56-218(1)'s phrase at "at the time of death." *Id.* at 477, 283 P.3d at 794. We then looked to the overall purpose of the statute for guidance, agreeing with the North Dakota Supreme Court's conclusion that "consideration of all the relevant statutory provisions, in light of the Congressional purpose to provide medical care for the needy, reveals a legislative intention to allow states to trace the assets of recipients of medical assistance and recover the benefits paid when the recipient's surviving spouse dies." *Id.* (quoting *In re Estate of Wirtz*, 607 N.W.2d 882, 885 (N.D. 2000)). Accordingly, we concluded that Idaho Code section 56-218(1) supports recovery from the estate of both spouses, including assets that were once community property, but were transmuted so that the recipient spouse no longer held an interest at the time of his or her death. *Id.*

An even more recent decision from this Court also dealt with Medicaid recovery under Idaho Code section 56-218 from the estate of a Medicaid recipient's spouse. *In re Estate of Wiggins*, 155 Idaho 116, 121, 306 P.3d 201, 206 (2013). In *Wiggins*, this Court looked at whether a Medicaid applicant's transfer of community property from his or her estate for Medicaid eligibility by way of a marriage settlement agreement ("MSA") also removes the community property from the estate for purposes of Medicaid recovery. *Id.* at 122, 306 P.3d at 207. To answer this question we again looked to the federal definition of "asset": "an item to which the recipient would be entitled *but for the* actions of the recipient or the recipient's spouse." *Id.* (emphasis in the original). We held that property transmuted for Medicaid eligibility fell within this definition of "asset" and that the actual transmutation fell within the "other arrangement" language of Idaho Code section 56-218(4)(B)'s definition of estate. *Id*. Noting that this interpretation of asset was consistent with the policy behind Medicaid, we held that removing a Medicaid applicant's community property from his or her estate for Medicaid eligibility by way of an MSA does not have the effect of removing the community property from the estate for purposes of Medicaid recovery. *Id.*

Cathie Peterson argues that Idaho Code section 56-218(4)(b)'s "interest at the time of death" language does not allow IDHW to recover Melvin Peterson's life estate interest because he had no interest in the life estate or property at the time of his death. IDHW argues that the transfer of Melvin Peterson's life estate interest at his death is one of the forms of conveyance specifically named in Idaho Code section 56-218(4)(b)—"conveyed to a survivor, heir, or assign of the deceased individual through joint tenancy, tenancy in common, survivorship, *life estate*, living trust or other arrangement." Cathie is correct that at common law a life estate terminates at the time of death. However, this Court has previously found Idaho Code section 56-218(4)(b) to be ambiguous based on the tension between the "interest at the time of death" language and the broad definition of "asset." *McCormick*, 153 Idaho at 475–76, 283 P.3d at 792–93. In *McCormick*, the Estate also relied on this language in its argument that a lifetime transfer of community property was not included within the definition of "estate," but the Court found this reliance to be misplaced holding that Idaho Code section 56-218(4)(b)'s definition of "estate" could include a life time transfer. As far as the weight to be given to the "at time of death language," the Court stated:

11

> Overall, the ambiguously inclusive language in the definition of "estate"—purporting to extend recovery to assets transferred by "other arrangements"—coupled with the definition of "assets"—plainly including the resources of the recipient's spouse as well as assets the recipient disposed of before death—calls into question the Estate's strict reliance on the phrase "at the time of death." 42 U.S.C. §§ 1396p(b)(4), 1396p(h)(1).

*Id.* at 477, 283 P.3d at 794. Melvin Peterson's conveyance included a "life estate" for himself with a "survivorship" interest or remainder interest for Cathie. While Melvin Peterson may not have had an interest in his life estate when he died, any interest he had in the property was transferred to Cathie at the time of his death making her interest in the property a fee simple rather than just a remainder interest. When assets of a Medicaid recipient are conveyed to a survivor, heir or assign by the termination of a "life estate," the assets remain part of the recipient's "estate" pursuant to 42 U.S.C. § 1396p(b)(4)(B) and Idaho Code section 56-218(4)(b). Therefore, Melvin Peterson's life estate interest was subject to Medicaid recovery under Idaho Code section 56-218(4)(b).

The next question is whether the district court correctly held that the remainder interest Melvin Peterson gifted to Cathie Peterson in 2001 was subject to Medicaid recovery. *Wiggins* and *McCormick* are equally instructive on this question. While both *Wiggins* and *McCormick* dealt with recovering assets from a Medicaid recipient's spouse, the language those cases relied on is equally applicable to the case at hand. The definition of "asset" includes income and resources that an individual is entitled to but does not receive because of *his or her own actions*. *See* 42 U.S.C. § 1396p(h)(1). In this case, as in *Wiggins* and *McCormick*, Melvin Peterson transferred his property in order to qualify for Medicaid assistance. Although Melvin Peterson transferred his property to his daughter rather than his spouse, the property is still recoverable under Idaho Code section 56-218(4)(b).

In *McCormick*, this Court held that Idaho Code section 56-218(4)(b) was ambiguous and declined to adopt the Minnesota Supreme Court's conclusion in *In re Estate of Barg,* 752 N.W.2d 52 (Minn. 2008) that the plain meaning of this section excluded lifetime transfers of property. 153 Idaho at 475, 283 P.3d at 792. In relevant part this Court stated:

> However, the language of 42 U.S.C. § 1396p(b)(4)(B) does not lend itself to the definitive interpretation made by the *Barg* court. The court indicated that "other arrangement" could not include lifetime transfers because it comes at the end of a list of conveyances that occur at the time of death. However, a conveyance of a life estate does not necessarily occur at the time of death. Nor does a conveyance into a "living trust." It would seem that a Medicaid recipient

would make such conveyances prior to death and that "other arrangement" could include other lifetime conveyances. Indeed, the use of the word "conveyed" is more indicative of a lifetime transfer than one made in the context of a decedent's estate, where "devised," "bequeathed," or "devolved" would be more appropriate. Further, the language "any other real and personal property and other assets in which the individual had any legal title or interest at the time of death" is not entirely clear. For instance, one might wonder what "other assets" a person could own other than real and personal property. And, one could interpret the "in which" clause to apply just to "other assets" or to both those and real and personal property. Thus, while the *Barg* court seemed convinced that the language excluded lifetime transfers, we find it to be ambiguously inclusive.

*Id.* at 475–76, 283 P.3d at 792–93.

The remainder interest Cathie Peterson received through a gift deed from Melvin Peterson in 2001 is part of his "estate" under Idaho Code section 56-218(4)(b). The retention of a life estate in his property while gifting the remainder interest to his daughter was simply a means of transferring the property to his heirs while avoiding probate. Rather than make an outright bequest of his property, Melvin Peterson made a lifetime transfer of a remainder interest in the property to Cathie Peterson during the relevant look-back period. But for the transfer of the remainder interest in his estate to his daughter in 2001, this interest would have been part of his estate and subject to Medicaid recovery. Therefore, the remainder interest constitutes an asset under 42 U.S.C. § 1396p(h)(1), just as community property transmuted through an MSA constitutes an asset. This type of transfer of property falls within Idaho Code section 56-218(4)(b)'s "other arrangement" language. Accordingly, the entire residential property that Cathie Peterson ultimately received from Melvin Peterson is subject to Medicaid recovery under Idaho Code section 56-218(4)(b). This conclusion is also consistent with Congress's intent to allow participating states broad authority to seek recovery of Medicaid benefits.[1]

IDHW sought recovery of only the retained life estate based on Idaho Code section 56-218(4)(b)'s language that assets conveyed by "life estate" were included within the definition of estate. IDHW argued that the value of Melvin's life estate should be calculated based on its value right before his death using the Life Estate Remainder Table contained in IDAPA 16.03.05.837 (Rule 837). Rule 837 is entitled "Life Estate as Asset Transfer" and provides a table for determining the value of a remainder interest that is transferred during the look back period for the purpose of determining the appropriate transfer penalty. The transfer penalty involves

---

[1] During oral argument, IDHW agreed it had waived any claim to Peterson's remainder interest. Because of that agreement and stipulation at oral argument, this opinion has no effect on that agreement between these parties.

restricted or delayed coverage for a Medicaid applicant or participant, and thus its use is contemplated during the lifetime of a Medicaid recipient. IDAPA 16.03.05.832. Cathie Peterson argued that this strained interpretation and unconventional use of the life estate table in Rule 837 was inappropriate. Although we no longer need to decide this issue, we note that for purposes of determining the value of a life estate for recovery from a Medicaid recipient's estate, the valuations in Rule 837 are not dispositive—parties may present evidence of alternative valuations.

**E. Whether Cathie Peterson was entitled to offsets to the value of the real property based on improvements she made.**

On appeal, Cathie Peterson argues that the magistrate court's findings as to her investment in the property are unsupported by the evidence and that "[i]nexplicably, the trial court disregarded Cathie's documented investment into the property."

Neither the magistrate court nor the district court disregarded Cathie Peterson's evidence. To the contrary, the magistrate court found, and the district court affirmed, that Cathie Peterson did expend money on legitimate improvements to the house. However, both courts held that the measure for damages is the difference in fair market value of the property before and after the improvements were made. Thus, to receive an offset for the improvements she made, Cathie Peterson was required to show how these improvements increased the fair market value of the property. The district court affirmed the magistrate court's denial of Cathie Peterson's claim for offsets based on her failure to provide any evidence, not even her own opinion, as to how these improvements enhanced the property's value.

On appeal, Cathie Peterson fails to point to anywhere in the record where she provided evidence that her improvements enhanced the property's value. Therefore, she has failed to show that the district court's decision was unsupported by the evidence.

**F. Attorney fees on appeal**

IDHW asserts that it is entitled to attorney fees on appeal under Idaho Code section 12-117 as the prevailing party. Under subsection (1) of that statute, upon appeal from any administrative proceeding involving as adverse parties a state agency and a person, the court "shall award the prevailing party reasonable attorney's fees . . . if it finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117. Thus, this Court will not award fees against a party that presents a "legitimate question for this Court to address." *Kepler-Fleenor v. Fremont Cnty.*, 152 Idaho 207, 213, 268 P.3d 1159, 1165 (2012).

14

The question of whether a decedent's retained life estate may be included as an asset within the decedent's estate for the purposes of Medicaid recovery is one of first impression that presents a legitimate question for this Court to address. Therefore, we decline to award attorney fees on appeal.

## IV. CONCLUSION

Both the magistrate court and the district court had subject matter jurisdiction over this case and personal jurisdiction over Cathie Peterson individually. We hold that the entire residential property that Cathie Peterson received from Melvin Peterson is an asset of his estate under Idaho Code section 56-218(4)(b) and subject to Medicaid recovery; thus, the district court erred to the extent it held that only the remainder interest in the estate was subject to Medicaid recovery. We also hold that Cathie Peterson failed to show that the district court's decision denying her claim for offsets was unsupported by the evidence. No attorney fees are awarded. Costs to IDHW.

Justices EISMANN, J. JONES and HORTON, **CONCUR.**