# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 51310

WALL & ASSOCIATES, INC., a Virginia corporation,

    Petitioner-Appellant,

v.

STATE OF IDAHO, DEPARTMENT OF FINANCE, CONSUMER FINANCE BUREAU,

    Respondent-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

**Boise, May 2025 Term**

**Opinion filed: August 21, 2025**

**Melanie Gagnepain, Clerk**

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The judgment of the district court is <u>affirmed</u>.

Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, and Mark B. Perry, Perry Law, P.C., for Appellant. William F. Mohrman and Mark B. Perry submitted argument on the briefs.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Loren K. Messerly submitted argument on the briefs.

---

MOELLER, Justice.

This case concerns the scope of the Idaho Collection Agency Act ("ICAA" or "the Act"), I.C. §§ 26-2221 to -2251, Idaho's statutory scheme for regulating the debt settlement and collection industry. Specifically, we have been asked to determine whether businesses that help clients settle their tax debts with the Internal Revenue Service ("IRS") and the State of Idaho fall within the regulatory purview of the ICAA.

Wall & Associates, Inc. ("Wall"), a Virginia company doing business in Idaho, refused to obtain a license under the ICAA, despite being notified by the Idaho Department of Finance ("Department") that it was required to do so. After Wall failed to obtain a license, the Department brought an administrative action against Wall seeking compliance with the ICAA and civil sanctions. The Director of the Idaho Department of Finance, Patricia R. Perkins ("the Director"),

ultimately issued a final order ("Final Order") determining that Wall needed to be licensed and imposing civil sanctions (fines and restitution) for its failure to do so. Wall filed a petition for judicial review in the district court. The district court upheld the Director's Final Order. Wall now appeals to this Court. For the reasons explained below, we affirm.

## I.    STATEMENT OF FACTS

Wall is a nation-wide tax debt relief company that provides its clients with various services aimed at resolving tax debt. Among other things, Wall represents taxpayers before the IRS and state revenue departments in administrative proceedings to help them obtain, through negotiation, favorable results for the tax debts they owe. Wall only provides services related to tax debt; it does not offer services related to any other type of debt. Some of Wall's employees are "enrolled agents" with the IRS, which means that they meet the federal requirements for nonlawyers or certified public accountants to represent taxpayers in IRS administrative proceedings. *See* 26 C.F.R. § 601.502. Wall negotiates on behalf of its clients for a reduction of their tax debt by submitting offers in compromise to the IRS or by proposing payment plan options. Although it is based in Virginia, Wall does a substantial amount of business in Idaho; however, it has not registered as a corporation with the Idaho Secretary of State nor is it licensed under the ICAA.

The origins of this case date back to 2011, when the Department received a complaint from two Idaho citizens regarding Wall's business practices. The complaint noted that the couple had hired Wall as a "tax relief service" in hopes of negotiating a reduction in the amount of taxes they owed to the government. However, the complainants alleged that Wall's business practices were harmful, rather than helpful: "We thought we were going with a reputable company and that a resolution we could afford would be negotiated. Instead, we are out $7800.00 and in a worse spot than when we started."

After receiving this complaint, the Department investigated Wall's business and determined that it fit within the definition of a "debt counselor" under the ICAA; thus, it was required to be licensed and was subject to regulation pursuant to the ICAA. The Department demanded that Wall "either obtain a license or quit doing business as a debt counselor in Idaho." Wall declined to do either. Although Wall refused to comply, the Department did not file an administrative action against Wall at that time. After roughly six years had passed without any further action, the Department received more complaints against Wall, again alleging abusive business practices. For example, one client alleged, "I have paid them a lot of money and they

2

haven't not [sic] given me the service I was told I would get and feel that I am being scammed." Another complained that "[w]e paid a local lawyer less than $800 to solve our problems! That's a big difference from $4000 up front and $400 monthly payments to get us nowhere."

After conducting another investigation, the Department brought an enforcement proceeding against Wall by filing an administrative complaint under the Idaho Administrative Procedure Act. The Department sought the "issuance of an order pursuant to [the ICAA], requiring [Wall] to immediately cease and desist from violating the [ICAA]," as well as civil penalties. Wall responded to the complaint by denying all liability and requesting a hearing. The matter was initially assigned to a hearing officer appointed by the Director. Following discovery, the parties filed cross motions for a preliminary order; the hearing officer subsequently entered an order granting the Department's motion. The hearing officer entered another preliminary order imposing $162,000 in civil penalties on Wall and ordering it to pay an additional $507,635.50 in restitution to its clients. Wall was also ordered to pay the Department's reasonable attorney fees.

Wall appealed the orders to the Director. After review, the Director entered a final order that largely upheld the hearing officer's earlier order. The Director found that Wall was subject to the licensure requirements of the ICAA and affirmed the fines and restitution imposed as civil penalties. However, the Director reduced the amount of restitution from $507,635.50 to $271,987.50. Wall subsequently filed a petition for judicial review in the district court. The district court upheld the Director's Final Order. Wall then timely appealed to this Court.

## II. STANDARDS OF REVIEW

When a district court acts in its appellate capacity under IDAPA, this Court reviews the agency record independently of the district court's decision and reverses or affirms the district court's decision as a matter of procedure. *Whittaker v. Idaho Dep't of Water Res.*, 174 Idaho 60, ___, 551 P.3d 729, 737 (2024) (citation omitted). Where an agency issues a final order,

> the court shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are:
>
> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Made upon unlawful procedure;
>
> (d) Not supported by substantial evidence on the record as a whole; or
>
> (e) Arbitrary, capricious, or an abuse of discretion.

3

I.C. § 67-5279(3)(a)–(e). In making these determinations, we will "not substitute [our] judgment for that of the agency as to the weight of the evidence on questions of fact." I.C. § 67-5279(1). Instead, this Court "defers to the agency's findings of fact unless they are clearly erroneous. In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *Urrutia v. Blaine County*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000) (citations omitted). "However, we exercise *de novo* review over questions of law." *3G AG LLC v. Idaho Dep't of Water Res.*, 170 Idaho 251, 257, 509 P.3d 1180, 1186 (2022).

### III.    ANALYSIS

This appeal chiefly asks us to decide two questions. First, whether Wall is a debt counselor within the purview of the ICAA and, second, whether the Director abused her discretion in ordering civil sanctions consisting of fines and the restoration of client fees. We will address each argument in turn.

### A. Wall, as a tax debt settlement business, fits within the definition of a debt counselor under the plain language of the ICAA.

The ICAA is intended to regulate the industries that interact with Idaho debtors. *See, e.g.*, I.C. §§ 26-2221 to -2251. These industries include debt collection agencies, debt and credit counselors, and credit repair organizations. Under the ICAA, debt counselors may not operate in Idaho without first obtaining a license from the Department. I.C. § 26-2223(7). As previously noted, Wall never obtained a license from the Department despite being notified that it was required to do so. Wall maintains that it does not need to obtain a license because it is not a debt counselor.

The ICAA defines "debt counselor" as "any person engaged in any of the activities enumerated in subsection (7) of section 26-2223, Idaho Code." I.C. § 26-2222(9). Those activities include any persons who:

> Engage or offer to engage in this state in the business of receiving money from debtors for application or payment to or prorating of a debt owed to, any creditor or creditors of such debtor, or engage or offer to engage in this state in the business of providing counseling or other services to debtors in the management of their debts, or contracting with the debtor to effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor.

I.C. § 26-2223(7). These activities can be separated into three categories. A debt counselor under the Act is one who: (1) "receiv[es] money from debtors for application or payment to or prorating

4

of a debt owed to, any creditor or creditors of such debtor"; (2) "provid[es] counseling or other services to debtors in the management of their debts"; or (3) "contract[s] with the debtor to effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor." *Id.*

Importantly, the ICAA exempts certain persons and entities from the Act's regulations. Those excluded from the purview of the Act include, but are not limited to, licensed attorneys, banks, regulated lenders, escrow agents, and real estate brokers. I.C. § 26-2239. There is no dispute that none of these exemptions apply to Wall or its tax debt settlement business.

The Director determined, and the district court agreed, that Wall met the definition of a debt counselor under the latter two activities set forth in Idaho Code section 26-2223(7). The Director found that Wall was engaged in both providing "counseling or other services to debtors in the management of their debts" and in "contracting with the debtor to effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor." Curiously, the ICAA does not define "debt" or "indebtedness"; however, the Director and the district court both determined that an unpaid "tax" obligation is a "debt" for the purposes of the ICAA. It was determined that Wall, by helping clients negotiate their tax liabilities, was providing counseling and services related to the management, adjustment, compromise, or discharge of debt or indebtedness.

Wall does not contest that it contracts with people to seek an adjustment, compromise, or discharge of their tax obligations. Nevertheless, Wall contends that tax debt settlement businesses do not qualify as debt counselors under the ICAA. Specifically, Wall argues that unpaid taxes are not debts. Wall claims that it only deals with taxes, it does not provide services to debtors in the management of their debts, nor does it contract with debtors to effectuate the "adjustment, compromise, or discharge of any account, note or other indebtedness" under Idaho Code section 26-2223(7). The Department holds a contrary view, maintaining that an unpaid "tax" is a "debt" under the ordinary meaning of the term and, thus, Idaho Code section 26-2223(7) directly applies to Wall's business.

"The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute." *Reclaim Idaho v. Denney*, 169 Idaho 406, 427, 497 P.3d 160, 181 (2021) (quoting *Hayes v. Medioli* (*In re Doe*), 168 Idaho 511, 516, 484 P.3d 195, 200 (2021)). The statute should be considered as a whole,

and its language "given its plain, obvious and rational meaning." *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). "If the statutory language is unambiguous, we need not engage in statutory construction and are free to apply the statute's plain meaning." *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009). Only where a statute is ambiguous—meaning it is capable of more than one reasonable interpretation—do we look beyond the literal words of the statute and consider public policy and legislative intent. *See State v. Taylor*, 160 Idaho 381, 385, 373 P.3d 699, 703 (2016) (citing *Doe I v. Boy Scouts of Am.*, 148 Idaho 427, 430, 224 P.3d 494, 497 (2009)).

Addressing the term "debt," considering its plain, obvious, and rational meaning, we conclude that an unpaid tax is a debt for the purposes of the ICAA. As used in the ordinary sense of the word, a debt is something owed to another—typically money. Black's Law Dictionary defines "debt" as: "1. Liability on a claim; a specific sum of money due by agreement or otherwise; 2. The aggregate of all existing claims against a person, entity, or state." *Debt*, Black's Law Dictionary (12th ed. 2024). Similarly, it defines "indebtedness" as: "1. The quality, state, or condition of owing money. 2. Something owed; a debt." *Indebtedness*, Black's Law Dictionary (12th ed. 2024). We conclude that an unpaid tax obligation falls squarely within these definitions because it is a liability owed to, or a sum of money due to, the government. Unlike Wall's attempt to distinguish an unpaid tax liability from a debt, it requires no verbal gymnastics for us to reach this conclusion—it naturally follows from an ordinary understanding of the English language.

Common usage serves to further confirm our conclusion. The term "tax debt" is a pervasive term in both the legal sphere and society at large. For example, this Court has referred to "tax debt" on numerous occasions. *See, e.g.*, *Christian v. Mason*, 148 Idaho 149, 154, 219 P.3d 473, 478 (2009); *Idaho State Tax Comm'n v. IR Trucking Tr.*, 144 Idaho 20, 156 P.3d 521 (2007); *Swope v. Swope*, 112 Idaho 974, 984–85, 739 P.2d 273, 283–84 (1987); *State v. Foeller*, 168 Idaho 884, 893, 489 P.3d 795, 804 (2021); *McGimpsey v. D&L Ventures, Inc.*, 165 Idaho 205, 213, 443 P.3d 219, 227 (2019). This is consistent with appellate decisions from other jurisdictions. *See, e.g.*, *Tyler v. Hennepin County*, 598 U.S. 631 (2023); *Gilliam v. McGrady*, 691 S.E.2d 797, 799 (Va. 2010); *Rouland v. Thorson*, 542 N.W.2d 681 (Minn. Ct. App. 1996). Likewise, the IRS repeatedly references "tax debt" in both official and non-official documents. *See* I.R.S., Form 656 Booklet, *Offer in Compromise* (2025) (form used to submit an offer in compromise that references "tax debt" over 50 times and explains that it "is an agreement between you (the taxpayer) and the IRS

that settles a tax debt for less than the full amount owed."); I.R.S., *Get Help with Tax Debt*, https://www.irs.gov/payments/get-help-with-tax-debt (last visited Aug. 18, 2025). Moreover, the term is used in topical literature and colloquially in popular media. *See* Jeffrey J. Cymrot, *Otherwise Dischargeable Tax Debt: In Re Haas and Judicial Construction of § 523(a)(1)(C)*, 2 DePaul Bus. & Com. L.J. 25 (2003); Press Release, Clear Start Tax, Unpaid Tax Debt Could Trigger Wage Garnishment - Clear Start Tax Explains What Most Don't Know (Apr. 21, 2025), https://www.idahostatesman.com/press-releases/article304663726.html. Other sections of the Idaho Code shed additional light on the plain meaning of the word "debt." Idaho Code section 63-3050 explicitly states: "Any tax owed . . . shall constitute a debt to the state of Idaho . . . ." I.C. § 63-3050. Although this is not necessarily determinative of the meaning of a word used in another statute, this provision further demonstrates that there is little, if any, doubt that unpaid taxes are generally treated as debts in the Idaho Code.

Finally, the record shows that Wall's own advertising materials referred to taxes as debts on numerous occasions. For example, Wall's advertising materials make the following claims, all referring to past due taxes as "debts":

- "Reduce IRS *Tax Debt*";
- "[W]e work hard to negotiate a final resolution to their past due *tax debts* and get their lives back to normal once and for all";
- "We have been able to reduce our client's *tax debts* by over $150 million dollars! We specialize in reducing, removing or restructuring unpaid Federal, State and city [sic] *tax debts* for individuals or businesses"; and
- "You have hired us to negotiate your *tax debt* with the IRS and the State of Idaho."

(Emphasis added). Wall cannot have it both ways; its own repeated reference to taxes as a form of debt reflect a conspicuous self-awareness of the true nature of its own business.

For all these reasons, we hold that the ICAA's use of the terms "debt" and "indebtedness" unambiguously include taxes. Because we reach this conclusion, we "need not engage in statutory construction," and will simply "apply the statute's plain meaning." *Callies*, 147 Idaho at 847, 216 P.3d at 136.

Wall offers an array of arguments in an attempt to distinguish taxes from other forms of debt; however, none of them are availing. First, Wall argues that a tax cannot be a debt because it is not "founded on contract or agreement," but is instead a "pecuniary" obligation imposed by the

government. Wall rests its argument on a quote from the Court of Chancery of New Jersey in 1945: "A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government, upon its citizens or subjects, for the support of the state. It is not founded on contract or agreement. It operates in invitum.[1]" *City of Newark v. Joseph Hollander, Inc.*, 42 A.2d 872, 875 (N.J. Ch. 1945) (citation omitted). Relying on this language, Wall asserts, without further explanation, that Idaho Code section 26-2223(7) does not apply to Wall under "its plain ordinary meaning[.]"

While Wall has pointed out an academic distinction between a tax and other forms of debt, that distinction does not overcome the commonly understood meaning of the word "debt" as used in the ICAA. Indeed, the ordinary meaning of debt makes no distinction between contracted debt and involuntary debt. Taxes are imposed by the government and, as a result, the taxpayer owes the government a certain amount of money. When a taxpayer owes money to the government, the amount owed falls within the plain meaning of "indebtedness" because it refers to "1. The quality, state, or condition of owing money [or] 2. something owed; a debt." *Indebtedness*, Black's Law Dictionary (12th ed. 2024). Formulated another way, a taxpayer has "liability on a claim" for a "specific sum of money" that is duly owed to the government. *See Debt*, Black's Law Dictionary (12th ed. 2024). Importantly, other types of debt can be involuntary, such as debt on civil liability in connection with tort judgments, child support payments, breaches of contract, and even criminal fines and restitution. Wall's interpretation would leave no room for such obligations to be deemed as debts. Simply put, even acknowledging the distinction between an involuntary debt and contracted debt, both fit into the same broad category: they are both forms of debt.

Next, Wall argues that defining debt to include taxes for the purposes of section 26-2223(7) would not give effect to all the words and provisions in the ICAA. Wall argues that the language "any account, note or other indebtedness" cannot include taxes due to the statutory canons of constructions *ejusdem generis* and *noscitur a sociis*. These canons respectively state that the "general words will be construed as meaning persons or things of like or similar class or character to those specifically enumerated," and that "a word is known by the company it keeps." *Pepple v. Headrick*, 64 Idaho 132, 141, 128 P.2d 757, 760–61 (1942) (citations omitted); *State v. Schulz*, 151 Idaho 863, 867, 264 P.3d 970, 974 (2011) (citation omitted). Because "other indebtedness" is a

---

[1] "In invitum" is a Latin term meaning "against an unwilling person." *In invitum*, Black's Law Dictionary (12th ed. 2024).

general term that follows an enumerated list ("account" and "note"), Wall asserts that the meaning of "other indebtedness" is determined by the words "account" and "note." Accordingly, Wall posits that "other indebtedness" necessarily excludes taxes, as it can refer only to "voluntarily incurred indebtedness," like accounts and notes.

This argument is unavailing. We do not employ canons of construction unless we find the statutory language ambiguous. Here, because the language is unambiguous, we do not need to turn to the canons of construction. *Callies*, 147 Idaho at 847, 216 P.3d at 136. Further, just because "other indebtedness" is a general term used as a catch-all phrase following a list of specific terms, does not mean that we should construe the general term so strictly that it eliminates its plain meaning. *See State v. Hart*, 135 Idaho 827, 831–32, 25 P.3d 850, 854–55 (2001) ("Finally, *ejusdem generis* is merely a rule of statutory construction and does not justify a court in confining the operation of a statute within narrower limits than intended by the legislature." (internal quotation marks and citations omitted)); *In re Winton Lumber Co.*, 57 Idaho 131, 135, 63 P.2d 664, 666 (1936). Indeed, even if a general term is interpreted to be similar to the more specific words, it does not mean that the general term ceases to act as a catch-all—the general term remains broader than the specific ones. In this same vein, Wall provides no argument explaining why the meaning of "other indebtedness," viewed in light of the words "account" and "note," entails a distinction between voluntary and involuntary debts. Wall fails to acknowledge that tax debts are similar to debts evidenced by accounts and notes in many other ways. Even acknowledging a distinction between voluntary and involuntary debts, Wall never explains why we should focus on that particular dissimilarity between taxes and accounts or notes, as opposed to characteristics they share.

Wall also argues that the Director's definition of debt is at odds with other provisions of the ICAA because a government is not covered by the Act's definition of a "creditor." The ICAA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." I.C. § 26-2222(6). A "person," in turn, is defined as "any individual, corporation, association, partnership, limited liability partnership, trust, company, limited liability company, or unincorporated association." I.C. § 26-2222(14). Wall focuses on the absence of a government entity from this definition, arguing that because the government is not a creditor under the ICAA, a tax cannot be a debt.

9

Once again, Wall's argument is unavailing. The fact that the government does not fall within the specific definition of "creditor" as set forth in the ICAA does not mean that the ICAA is inapplicable to debts owed to the government, like taxes. Importantly, none of the applicable language setting forth the definition of a debt counselor uses the term "creditor." The Director found that Wall "engage[s] or offer[s] to engage in this state in the business of providing counseling or other services to debtors in the management of their debts," and "engage[s] or offer[s] to engage in this state in the business of . . . contracting with the debtor to effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor." (Quoting I.C. § 26-2223(7)). Interpreting this language does not require us to opine on whether the government is a creditor for the purposes of the ICAA. Said another way, the fact that the government is not a creditor as defined by the ICAA does not preclude a tax from being a debt. And while it may limit the application of the ICAA as it relates to the government being a creditor for the Act's purposes, that is not at issue in this case.[2]

Importantly, we note that the ICAA is not an act that regulates creditors; instead, it regulates the intermediaries who represent debtors. The ICAA employs the term "creditor" in a particular sense, which is why it provided a specific definition for it. Although a government, in the broad sense of the word, can certainly be a creditor, the ICAA has opted to limit that otherwise general term in a specific manner. The unambiguous meaning of "debt" is not contingent on the application of the ICAA to the government as a creditor, something that has negligible effect on the Act overall.

Wall next cites Idaho Code section 26-2229(3)(b) for the proposition that the ICAA does not apply to tax debt businesses. This provision states, in relevant part, that:

> Debt counselors . . . who do not receive, hold or disburse funds from debtors for payment to creditors shall not charge or accept as a fee for their services more than twenty percent (20%) of the principal amount of the debtor's *unsecured debt* at the time of contracting for services for the management of debt.

I.C. § 26-2229(3)(b) (emphasis added). Wall focuses on the reference to unsecured debt and suggests that this makes the Act inapplicable to tax debts. It asserts that, because tax liabilities are "secured," unlike the "unsecured debts" mentioned in the statute, this provision means it could

---

[2] Wall also points out that, under this Court's definition, accountants may fall under the regulatory purview of the ICAA. But again, that issue is not before this Court. Moreover, accountants are subject to different regulatory schemes under Idaho law; they also provide different services than Wall, and the evidence shows that the Department has not sought enforcement of the ICAA on accountants.

"never charge a taxpayer anything to represent the taxpayer regardless of whether the tax is secured or not."

Wall's proffered interpretation of Idaho Code section 26-2229(3)(b) is inapt. As the Director noted, this provision simply means that debt counselors dealing with unsecured debts in this particular manner may not charge more than 20% of the amount of the unsecured debt. By its plain language, this provision would be inapplicable to services related to secured debts. Singling out unsecured debt as a specific type of debt in this instance does not mean that the Act only applies to that type of debt in every other instance; rather, we presume the legislature chose to single out that type of debt for a reason in that particular provision.

Finally, Wall cites the Idaho Taxpayers' Bill of Rights, I.C. §§ 63-4001 to -4015, for the proposition that "anyone" may represent Idaho taxpayers before the Idaho State Tax Commission. Because the ICAA requires Wall to obtain a license to represent Idaho taxpayers, Wall suggests that it conflicts with the Taxpayers' Bill of Rights. Additionally, Wall asserts that the Taxpayers' Bill of Rights governs over the ICAA because it is the more specific statute.

Wall fails to support its assertion that the Taxpayers' Bill of Rights provides that "anyone" may represent an Idaho taxpayer before the Idaho State Tax Commission. Nowhere does the Taxpayers' Bill of Rights state that "anyone" is qualified to represent a taxpayer, nor does it say anything suggesting that such representatives cannot be otherwise regulated. *See* I.C. §§ 63-4001 to -4015. Thus, Wall fails to identify any conflict between the ICAA and the Taxpayers' Bill of Rights. If a taxpayer wishes to have Wall represent them before the Idaho State Tax Commission, they may do so; however, Wall simply needs to be licensed in accordance with the ICAA.

For all these reasons, we conclude that the ICAA's use of the term "debt" and "indebtedness" unambiguously includes taxes as a form of debt. As a result, Wall falls within the definition of a debt counselor.

## B. The ICAA is not preempted by federal law.

Even if tax debt settlement companies fall within the regulatory bounds of the ICAA, Wall argues that federal law preempts the ICAA. Wall asserts that federal law conflicts with any requirement that it be licensed under the ICAA because it would be prevented from representing taxpayers in administrative proceedings before the IRS. However, as we explain below, there is no conflict between the ICAA and federal regulations; in fact, the ICAA complements federal law.

"The Supremacy Clause mandates that federal law 'shall be the supreme Law of the Land,'" and the U.S. Supreme Court has held that a state law which conflicts with federal law is 'without effect.'" *Idaho Dep't of Health & Welfare v. McCormick*, 153 Idaho 468, 471, 283 P.3d 785, 788 (2012) (first quoting U.S. Const. art IV, cl. 2; and then quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). Federal law can preempt state law in two ways. First, by Congress showing "the intent to occupy a given field," and second, "even if the field is not preempted, if state law conflicts with federal law, it is preempted to the extent of the conflict." *Christian v. Mason*, 148 Idaho 149, 152, 219 P.3d 473, 476 (2009). The latter way, called conflict preemption, only occurs "when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987) (citations omitted). "Essentially, this Court must find that a state law is directly contrary to the congressional intent behind a federal statute before state law will be preempted." *Christian*, 148 Idaho at 152, 219 P.3d at 476. When determining if a state law is preempted, we "begin with a presumption of no preemption." *McCormick*, 153 Idaho at 471, 283 P.3d at 788.

Wall asserts that conflict preemption applies in this case, positing that the ICAA, as a licensing scheme, conflicts with federal regulations authorizing certain people to represent taxpayers before the IRS. The Secretary of the Treasury, as authorized by Congress, promulgated rules governing those who may represent taxpayers before the IRS. 31 U.S.C. § 330(a); 31 C.F.R. § 10.3(b)–(d). Those who may do so include attorneys, certified public accountants, and enrolled agents. 31 U.S.C. § 330(b); 31 C.F.R. § 10.3. Wall employs enrolled agents. Because the ICAA requires Wall to be licensed, in addition to qualifying as an "enrolled agent" to represent Idaho taxpayers before the IRS, Wall asserts that the ICAA is preempted by federal law.

As support for this proposition, Wall relies on *Sperry v. State of Florida ex rel. Florida Bar*, 373 U.S. 379 (1963). In that case, Florida enjoined the petitioner, a nonlawyer, from preparing or prosecuting patent applications before the United States Patent Office, concluding that the petitioner's conduct amounted to the unauthorized practice of law. *Id.* at 381–82. However, Congress had statutorily authorized the Commissioner of Patents to adopt regulations regarding who could practice before the Patent Office, and the Commissioner adopted regulations providing for the admission of nonlawyers (under certain qualifications). *Id.* at 385. On appeal, the *Sperry* court held that the Florida law was in direct conflict with federal law and was expressly preempted

because it restricted *all nonlawyers* from practicing before the Patent Office. *Id.* at 385. The Court concluded that "the order enjoining petitioner must be vacated since it prohibits him from performing tasks which are incident to the preparation and prosecution of patent applications before the Patent Office." *Id.* at 404. It further held that:

> A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.

*Id.* at 385 (footnotes and citation omitted). Wall contends that *Sperry* supports a finding of preemption in this case. We disagree.

While there are some similarities between the situation in *Sperry* and the case at hand, there are also key differences. Most importantly, this case does not represent a direct conflict like the one in *Sperry*. The Florida law at issue prohibited all nonlawyers from representing people in front of the Patent Office; there was no other way to practice in front of the Patent Office unless one became an attorney. *Id.* at 382. Thus, it directly conflicted with the federal government's directive that expressly allowed nonlawyers to practice before the Patent Office, in addition to lawyers. *Id.* at 384–86. Said another way, since Florida's law completely barred the Commissioner from allowing nonlawyers to practice before the Patent Office, it eliminated the Commissioner's ability to allow any nonlawyers to participate. Here, the ICAA does not prevent an enrolled agent from practicing before the IRS; it simply requires that such agents must also be licensed by the state as a debt counselor. In this way, the ICAA does not eliminate the entire category of enrolled agents from appearing before the IRS; it only imposes a state licensing requirement. Therefore, the ICAA is not in direct conflict with the IRS regulations, like the law in *Sperry*, because it is still possible to comply with both the ICAA and the IRS rules.

Further, in reaching the conclusion that the Florida law was preempted by federal law, the *Sperry* court relied on the longstanding history of nonlawyers practicing before the Patent Office. *Id.* at 388–403. Here, Wall has provided no evidence that unregulated entities have the right to practice before the IRS. We also note the significant distinction between obtaining a license to practice law and obtaining a license under the ICAA. While becoming an attorney is a complex process, requiring specific academic credentials, vetting, and a testing process, the ICAA only requires that Wall submit an application and pay a fee. I.C. § 26-2224(1). It does not create the

13

same type of roadblock to practicing before the federal body that *Sperry* addressed. This reflects a crucial difference between the law at issue in *Sperry* and the one here.

Additionally, unlike the Florida law at issue in *Sperry*, the ICAA is not directly contrary to the "purposes and objectives of Congress." *Granite Rock Co.*, 480 U.S. at 581. Rather, the ICAA can be seen as complementary to them. As noted by the Director, "the IRS's repeated warnings about [offers in compromise] mills suggests that it welcomes state regulation in this area to help protect tax debtors[.]" While the ICAA regulates debt settlement companies as it relates to their interactions with Idaho debtors—including taxpayers—it does not seek to regulate the relationship between debt settlement companies and the IRS. By acting to protect Idaho citizens from predatory businesses in the debt settlement industry, the ICAA does not stand in conflict with the federal law. Moreover, "consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety," preemption is disfavored when a state regulates pursuant to its police powers. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Regulating the credit and debt business falls into this category. *See, e.g.*, *Hankins v. Spaulding*, 78 Idaho 533, 307 P.2d 222 (1957).

For these reasons, we conclude that Wall has failed to establish that the ICAA is preempted by federal law and hold that the Director did not err in concluding that Wall is a debt counselor subject to regulation under the ICAA. Thus, we affirm the district court's decision upholding the Director's Final Order on this issue.

## C. The Director did not abuse her discretion in disregarding certain evidence.

Wall argues that the hearing officer improperly excluded evidence and that the Director erred by failing to address the hearing officer's decision to do so. During the initial proceedings, the assigned hearing officer struck seven paragraphs of a declaration submitted by P. Mark Yates, the Chief Executive Officer of Wall. The hearing officer concluded that these paragraphs consisted of mere legal conclusions and, thus, were not relevant to the proceeding. On appeal, Wall maintains that Yates' testimony was relevant and should not have been excluded.

The "Idaho Rules of Civil Procedure and the Idaho Rules of Evidence do not apply to contested case proceedings conducted before the agency." IDAPA 04.11.01.052 (2022). Under the applicable rules, a hearing officer may, with or without objection, "exclude evidence that is irrelevant, unduly repetitious, inadmissible on constitutional or statutory grounds, or on the basis of any evidentiary privilege provided by statute or recognized in the courts of Idaho." IDAPA 04.11.01.600 (2022). Based on this rule, the hearing officer excluded certain paragraphs of the

Yates Declaration because they were unsupported "opinions and conclusions . . . and were advanced without sufficient showing of the foundational basis for such matters." Thus, the hearing officer concluded, "[a]bsent such foundation these matters [were] irrelevant and subject to exclusion."

Wall maintains that, on appeal from the hearing officer's order, the Director failed to directly address the hearing officer's order excluding the portions of the Yates Declaration. However, the record establishes that the Director specifically incorporated all the hearing officer's decisions and orders *except* for the one excluding the Yates Declaration. Indeed, the entire Yates Declaration remained in the record. Thus, there is no evidence that the Director excluded the paragraphs of the Yates Declaration at issue here; instead, it appears that the Director simply did not rely on Yates' testimony in his declaration when she issued her decision.

We only review the Director's Final Order; we do not review the decision of the hearing officer. *See* I.C. §§ 26-2249, 67-5279. The record indicates that the Director simply opted not to rely on Yates' testimony. Wall has not demonstrated that the Director abused her discretion by doing so. Indeed, Wall simply alleges that: "None of [Yates'] testimony is irrelevant. The [d]istrict [c]ourt should be reversed." Wall never explains why the Director abused her discretion in failing to rely on the declaration or why we may review the decision of the hearing officer. As a result, Wall has failed to demonstrate an abuse of discretion by the Director, and we uphold the district court's decision on this issue.

### D. The Director did not abuse her discretion in imposing a sanction on Wall.

Wall argues that the Director abused her discretion by imposing civil sanctions totaling $162,000 in fines and $271,987.50 in fees to be repaid to its clients. Wall asserts that the sanction is "draconian" and "unjust."

Based on the stipulations of the parties and evidence in the record, the Director found that Wall committed 54 violations of the ICAA in contracting with its Idaho clients for debt settlement services. The Director noted that these violations resulted in Wall receiving a total of $661,339.00 in payments from the 54 clients. In issuing the civil sanction, the Director noted that Idaho Code section 26-2244(2)(a) grants her discretion to determine the amount of the fee imposed, up to $5,000 per violation. I.C. § 26-2244(2)(a) ("[T]he [D]irector may . . . [i]mpose a civil penalty of not more than five thousand dollars ($5,000) for each violation upon any person found to have violated any provision of this [A]ct . . . ."). After examining caselaw pertaining to the relevant

factors to imposing an administrative penalty, the Director then imposed "a civil penalty of $3,000 per violation (60% of the max penalty), for a total civil penalty of $162,000." The Final Order stated:

> A significant civil penalty is particularly important to deterrence of future violations where Wall was told in 2011 that it was violating the ICAA, Wall was aware or should have been aware of the possible statutory sanctions for getting caught pursuing further unlicensed activities, but Wall still chose to proceed with violating the ICAA. In fact, Wall appears to still be openly violating the ICAA, refusing to become licensed while this action is on-going. The civil penalty cannot merely be the "cost of doing business" for Wall. The facts to date show that if Wall is going to comply with this regulatory regime created by the Idaho Legislature, then Wall will need a significant penalty to convince it of the importance of compliance.

The Director also incorporated by reference the reasons stated by the hearing officer and explained that "deterrence and enforcement of the statutory regulatory program" were key factors for her decision.

Next, the Director recognized that she also had the discretion to order Wall to disgorge *all* the fees it had received and restore them to Wall's Idaho clients pursuant to Idaho Code section 26-2244(2)(b), which states that the Director may "[i]ssue an order restoring to any person in interest any consideration that may have been acquired or transferred in violation of this act[.]" Nevertheless, as explained in the Director's Final Order, she "exercise[ed] her discretion to not provide a blanket restoration of all fees," instead opting to "limit the restoration of fees pursuant to principles of restitution and/or disgorgement."

While there was insufficient evidence in the record to suggest that "restoring all fees would make all clients 'whole' or deprive Wall of 'ill-gotten gains,'" the Director found that "the evidence [was] sufficient to support restoration of fees for some clients who were harmed in the fees they were overcharged." The Director then examined the documentation submitted by both Wall and the Department to determine which clients were harmed by Wall and had overpaid for its services. After reviewing this evidence, the Director noted that many of the clients "received no value for [their] fees and suffered significant stress from Wall's inaction[.]" Thus, "[w]eighing and evaluating the evidence, the Director [found] that these clients did not get what they paid for and should have fees, partially or fully, returned."

We conclude that the Director provided ample reasoning in support of her discretionary sanction order. The Director explained her reasoning in detail, spanning multiple pages in the Final

Order. The Director's decision was based on substantial evidence in the record and was guided by relevant caselaw. For example, in one instance, the Director explained:

> As to AM and VM, Wall provides no evidence to suggest that it is entitled to keep any of the fees it received. Wall is ordered to repay the entire fees of $7,800, which should have been paid back many years ago. Similarly, the evidence in the record indicates that MG ultimately received no value for his fees and suffered significant stress from Wall's inaction, so those fees are ordered to be repaid in the amount of $6,300. MP paid $10,800, and Wall claims she was benefited both in receiving help with two lien releases from the State of Idaho and in getting some help with filing tax returns (though, not actually preparing the tax returns, which was outside the scope of the contract). Based on that evidence, Wall will refund $9,000 in excessive fees. MM paid $10,375 in fees and he seems to have ultimately received the most assistance per the testimony and documents submitted by Wall. MM's complaint to the BBB indicated that he had been waiting approximately two years for Wall to submit an Offer in Compromise. Wall's records suggest that it finally acted after that complaint was made to the BBB. Therefore, Wall will repay eighteen months of monthly payments at $350 per month, for a total of $6,300.

(Internal citations omitted). The Director conducted a similar analysis concerning the other clients, explaining why she was ordering the return of fees to them.

Wall takes issue with the amount of the civil sanction and the Director's order to restore fees to its clients. Wall argues that the civil sanction was too harsh, and that it exceeded other penalties the Director has issued. Wall contests the Director's findings that it did not provide any substantial benefits to its clients through its services. It asserts that it did at least some work on behalf of each customer, and the results are not always easily seen. Wall also points out that it cannot be successful in every case it takes up.

Wall's arguments are unconvincing. First, the fact that the Director imposed a higher sanction on Wall than it has on other violators of the ICAA does not amount to a per se abuse of discretion. Wall fails to recognize that more severe penalties may be appropriate for different violations. Indeed, Wall's sanction was issued in light of the nature of its specific violations in this case, and was based on the many aggravating factors noted by the Director, such as Wall's longstanding knowledge of its lack of compliance, the length of its non-compliance, its misleading advertising, its practices that "make it difficult for any Idaho client to seek redress," and its refusal to pay judgments owed to Idaho residents. Notably, the sanction ultimately imposed was lower than the statutory maximum that the Director could have imposed; thus, the Director did not exceed her statutory authority.

Second, the restoration of fees was based on the evidence in the record. The Director found that Wall's clients "did not get what they paid for," and that Wall charged its clients excessive fees for the services provided. As noted by the district court, the Director used the record "to determine where restitution was needed to make each client whole and considered whether Wall's gains from each client were improper based on the fees charged, work completed, and results obtained that she had within the record." The fact that Wall provided some services to its clients does not prevent the Director from properly ordering restoration of fees where the client was overcharged. Idaho Code section 26-2244(2)(b) states that the Director may "[i]ssue an order restoring to any person in interest *any consideration that may have been acquired or transferred in violation of* [*the ICAA*] or a rule adopted or an order issued under [the ICAA.]" I.C. § 26-2244(2)(b) (emphasis added). That is precisely what the Director did here.

For these reasons, we conclude that the Director did not abuse her discretion in issuing the civil sanction of $162,000 and ordering Wall to repay $271,987.50 in fees to its clients. Wall has failed to show any basis under Idaho Code section 67-5279(3)(a)–(e) for relief. Because the Director's order was based on substantial evidence, we affirm the district court's order upholding the Director's order of sanctions.

Wall asserts three remaining arguments on the impropriety of the sanction, which it supports with little, if any, cogent analysis or authority. First, the Director correctly determined that the three-year statute of limitation in Idaho Code section 5-218 does not apply to this action. Idaho Code section 5-218 provides a three-year limitation for: "An action upon a liability created by statute, *other than a penalty or forfeiture.*" I.C. § 5-218(1) (emphasis added). We have explicitly held that "section 5-218 excludes statutory liabilities for a penalty or forfeiture[.]" *Dep't of Health & Welfare v. Beason*, 173 Idaho 672, 679, 546 P.3d 684, 691 (2024). Here, the enforcement action brought against Wall was indisputably a penalty action, as the Department sought sanctions against Wall in accordance with the ICAA. Thus, the statute of limitation in section 5-218 is not applicable to this action.

Second, Wall claims that the Department was estopped from bringing an enforcement action against it. Wall argues that the Department's delay in initiating an enforcement action against it prevents the Department from doing so now, as it relied on the Department's inaction. But two things put Wall's quasi-estoppel argument to bed. One, barring an "exceptional case[]," "[e]stoppel may not . . . be invoked against a government or public agency functioning in a

sovereign or governmental capacity." *Naranjo v. Idaho Dep't of Corr.*, 151 Idaho 916, 919, 265 P.3d 529, 532 (Ct. App. 2011) (citations omitted). Two, quasi-estoppel is only applicable when the party has taken an inconsistent position to the detriment of the other party. *See Sagewillow, Inc. v. Idaho Dep't of Water Res.*, 138 Idaho 831, 845, 70 P.3d 669, 683 (2003) (holding quasi-estoppel did not apply unless the agency takes an inconsistent position); *KTVB, Inc. v. Boise City*, 94 Idaho 279, 282, 486 P.2d 992, 995 (1971); *City of Eagle v. Idaho Dep't of Water Res.*, 150 Idaho 449, 454, 247 P.3d 1037, 1042 (2011). Here, the Department never took inconsistent positions; it consistently maintained that Wall needed to be licensed under the ICAA. Any delay in bringing an enforcement proceeding against Wall is not evidence of an inconsistent position, nor does it amount to acquiescence to Wall's unlicensed business activity.

Finally, Wall contends that the Director's imposition of "catastrophic financial penalties" was "unconstitutionally excessive" under the Eighth Amendment. However, Wall fails to cite any authority for this proposition and provides no explanation of the standard to be employed in determining an Eighth Amendment "excessive fines" violation. Indeed, Wall only devotes three sentences to the issue, all of which are conclusory and unhelpful. "It is well established that this Court will not consider an issue on appeal that is not 'supported by argument and authority in the opening brief.' " *Greenfield v. Meyer*, 174 Idaho 774, ___, 560 P.3d 517, 525 (2024) (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008)); *see also* I.A.R. 35(a)(6). Accordingly, we conclude that Wall waived its constitutional argument, and we decline to consider it.

### E. The Department is not entitled to attorney fees on appeal.

The district court awarded attorney fees to the Department below, and Wall does not contest that ruling on appeal. However, the Department also requests attorney fees on appeal pursuant to Idaho Code section 12-117, which "directs the Court to award attorney fees 'in any proceeding involving as adverse parties a state agency or a political subdivision and a person,' if it 'finds that the nonprevailing party acted without a reasonable basis in fact or law.' " *Watkins v. City of Ponderay*, 172 Idaho 461, 465–66, 533 P.3d 1257, 1261–62 (2023) (quoting I.C. § 12-117(1)). The Department argues that it is entitled to attorney fees on appeal because the "plain reading of the statutes at issue were clear enough to dispose of any reasonable argument to the contrary." *Owens v. Ada Cnty. Bd. of Comm'rs*, 171 Idaho 794, 804, 526 P.3d 964, 974 (2023). The Department also

points out that Wall made "the same arguments" on appeal to this Court as it did to the district court.

Although we hold that the ICAA applies to Wall, this was a matter of first impression. Wall raised good faith arguments regarding the statute's meaning and applicability. For example, the determination of whether "debts" included "taxes" under the ICAA is a question we have not been asked to answer. This Court often declines to award attorney fees in such cases. *See PurCo Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 140 Idaho 121, 127, 90 P.3d 346, 352 (2004) ("A case of first impression does not constitute an area of settled law; therefore, the request for attorney fees should be denied."). While, in some instances, a question of first impression may have such an obvious answer that the question itself is frivolous, we do not conclude that was the case here. Thus, we decline to award attorney fees on appeal to the Department. However, as the prevailing party, the Department is entitled to an award of costs as a matter of course pursuant to Idaho Appellate Rule 40(a).

## IV.    CONCLUSION

We affirm the district court's decision upholding the Director's Final Order. The Department is awarded costs, but not attorney fees, on appeal.

Chief Justice BEVAN, and Justices BRODY, ZAHN, and MEYER CONCUR.